**INDIANAPOLIS CONVENTION & VISI-
TORS ASSOCIATION, INC., Appellant
(Plaintiff/Counter–Defendant below),**

v.

**INDIANAPOLIS NEWSPAPERS, INC.,
Appellee (Defendant/Counter–
Claimant below).**

No. 30S04–9108–CV–649.

Supreme Court of Indiana.

Aug. 26, 1991.

Peter G. Tamulonis, John B. Drummy, Kightlinger & Gray, Indianapolis, for appellant.

Robert P. Johnstone, Jan M. Carroll, Barnes & Thornburg, Indianapolis, for appellee.

Linley E. Pearson, Atty. Gen., David F. Hamilton, Counsel to the Governor, Indianapolis, for amicus curiae Ind. State Bd. of Ind.

KRAHULIK, Justice.

This case presents the question of whether the Indianapolis Convention & Visitors Association, Inc. ("ICVA"), a private not-for-profit corporation that receives revenue from both public and private sources, is subject to the Indiana Access to Public Records Act ("Public Records Act"), IND. CODE ANN. § 5–14–3–1 *et seq.* (West 1989 & Supp.1990).

ICVA (plaintiff-appellant below) seeks transfer after the Court of Appeals affirmed the trial court's judgment that ICVA was subject to the Public Records Act and, therefore, was required to produce certain records requested by Indianapolis Newspapers, Inc. ("INI"), (defendant-appellee below). *Indiana Convention & Visitors Assoc. v. Indpls. Newspapers, Inc.* (1990), Ind.App., 559 N.E.2d 356, *reh'g. den.* at 361. INI also seeks transfer relating to that portion of the appellate court's opinion denying rehearing that makes the records sought by INI available only from 1989 forward. Because we conclude that ICVA is subject to the Public Records Act and that the records requested by INI are subject to disclosure from 1984 forward, we now grant tranfser, vacate the opinion of the Court of Appeals, and affirm the trial court.

The facts are as follows. ICVA has been a not-for-profit corporation since 1932. Currently, it has approximately 600 members, consisting of organizations, corporations, and associations engaged in the hotel, restaurant, travel or retail sales business in the Indianapolis area. Decisions concerning the operation of ICVA are made by its directors, officers and employees, without the control of any governmental entity. ICVA has three primary sources of revenue: advertising income, membership dues, and monies from the Capital Improvement Board of Managers of Marion County ("CIB").

The CIB is a municipal governmental entity created pursuant to statute. IND.CODE ANN. § 36–10–9–1 *et seq.* (West 1983 & Supp.1990). The CIB receives the proceeds of the Marion County Hotel–Motel tax. The CIB is authorized to use these public dollars to fund governmental, public and private agencies and groups active in promoting and publicizing the convention and

visitor industry in Indianapolis. IND.CODE ANN. § 36–10–9–6(14) (West 1983). The CIB provides funds to ICVA pursuant to this authority.

In June 1989, INI requested, pursuant to the Public Records Act, that ICVA produce copies of internal expense vouchers for the years 1978 to 1989. ICVA declined, and

1. Alternatively, ICVA claimed the records sought were trade secrets as defined by the Uniform Trade Secrets Act. *Ind.Code Ann.* § 24–2–3–1, *et seq.* (West 1990). This ruling is the subject of a separate appeal and is not addressed by us today.

2. The findings and conclusions entered by the trial court are as follows.

### FINDINGS OF FACT

1. INI is an Indiana Corporation with its principal place of business in Indianapolis, Indiana. INI is engaged in the gatherine and dissemination of news and publishes The Indianapolis News ("The News").

2. The News is a newspaper of general circulation serving readers and the public in the City of Indianapolis and Marion County, Indiana.

3. The ICVA is a not-for-profit corporation organized under the laws of the State of Indiana.

4. As part of its newsgathering and reporting, The News reports on the activities of the ICVA.

5. The Capital Improvement Board of Managers of Marion County ... is a public agency created pursuant to IND.CODE 36–10–9–1 *et seq.* (Supp.1989).

6. The tax receipts and other moneys paid to the CIB are public funds, and the treasurer of the CIB must account for them as public funds, pursuant to the command of the CIB statute. IND.CODE 36–10–9–9.

7. Pursuant to the 1985 Contract between the ICVA and the CIB and the practices followed for years by the parties to the Contract, the CIB annually allocates to the ICVA a portion of the proceeds of the Marion County motel-hotel tax and also provides offices, meeting space, furniture and equipment at no charge to ICVA. The CIB funds the ICVA pursuant to the powers and duties set forth in IND.CODE 36–10–9–6(14) which authorizes the CIB to fund governmental, public and privage agencies and groups for the purpose of promoting and publicizing the convention and visitor industry.

8. The ICVA's allocation of a portion of the hotel-motel·tax receipts is paid to the ICVA out of the CIB's general fund. The moneys in the CIB's general fund are public funds, and are audited as such by the State Board of Accounts.

9. Under the Contract between the CIB and the ICVA and the practices which have been followed for many years, the annual allocation of financial support for ICVA is tied to the CIB's receipt of revenues from the hotel-motel tax.

filed a complaint against INI seeking a declaratory judgment that ICVA is not subject to the Public Records Act.[1] The action was tried to the bench. The trial court entered findings of fact and conclusions of law, holding that ICVA was subject to the provisions of the Public Records Act, and was obligated to produce the records requested by INI.[2]

Annually, the funding from the CIB represents approximately 20% of the receipts from the hotel-motel tax. The CIB's funding of the ICVA is not dependent on the ICVA booking a specific number of conventions, filling a set number of hotel room-nights or convention days or any other objective measure of the ICVA's performance.

10. The ICVA does not submit itemized claims or invoices to the CIB in order to receive the public funds from the CIB. The CIB, in turn, has not required the submission of itemized claims or invoices from the ICVA before making payments to the ICVA, despite the requirement for such under IND.CODE 36–10–9–9(d).

11. The amount of the payments by the CIB to the ICVA under the Contract was not negotiated by the parties.

12. The CIB makes its payments to the ICVA in monthly installments. The first eleven monthly installments are figured as 1/12 of the allocated portion of the projected receipts from the hotel-motel tax. The twelfth installment is adjusted upward or downward to reflect actual hotel-motel tax receipts in a given year.

13. The ICVA receives its monthly installments of public funds from the CIB regardless whether any conventions booked by the ICVA have occurred during that month. The ICVA also receives public funds allocated as a portion of the hotel-motel tax receipts which are attributable to events, such as the Indianapolis 500–Mile Race, that it had no role in bringing to Indianapolis.

14. The public funds received by the ICVA from the CIB are not fees for promotional and booking services. That term appears nowhere in the ICVA's Contract with teh CIB, nor in any other document establishing the relationship between the ICVA and the CIB.

15. The ICVA has consistently described the public funds it receives from the CIB as "indirect public support." Its federal and state tax returns for the tax years 1982 through 1987 describe the CIB funding as such. Only after a question was raised about the public funding received from the CIB did the ICVA file an amended 1987 return in June 1989 characterizing the funding as "convention and tourism promotion."

16. The funds received from the CIB annually exceed 25% of the total revenues of the ICVA. In fact, money from the CIB in the last four years has funded from 60% to 79% of the

ICVA appealed on the grounds that it was not a public agency as statutorily defined and, therefore, not subject to the Public Records Act because it was neither subject to audit by the State Board of Accounts nor exercising a delegated governmental power. The Court of Appeals affirmed the judgment with respect to the trial court's conclusion that ICVA met the definition of a public agency because it was subject to audit by the State Board of Accounts in that ICVA was "maintained and supported" with public monies. The court concluded that ICVA was not exercising a delegated governmental power. The court also decided that ICVA was obligated to produce records from 1989, but not from 1978 to 1989 as originally requested by INI because it was not until 1989 that the State Board of Accounts first notified ICVA that it was subject to be audited.

In its petition to transfer, INI argues that the Court of Appeals erred in limiting the period of time for which records are available under the Public Records Act, and asserts that it is entitled to all records originally requested. Additional facts shall be added as necessary.

## STANDARD OF REVIEW

■ This action was tried to the bench, and the trial court made its findings of fact and conclusions of law pursuant to Ind.Trial Rule 52(A). ICVA contends that the Court of Appeals incorrectly applied the "clearly erroneous" standard of review in evaluating the trial court's findings and conclusions because the operative provisions of the 1985 contract between ICVA and CIB are unambiguous. ICVA claims that only if the terms of a contract at issue are ambiguous must an appellate court give deference to the trial court's findings and conclusions, because the appellate tribunal is in as good a position as the trial court to interpret documentary evidence. Although we accept ICVA's argument as a correct statement of law, it has no application here because ICVA submitted evidence in addition to the contract itself. Thus, the evidence submitted by the parties and evaluated by the trial court was not limited to documents. Here, the trial court judged the credibility of witnesses and determined the relative weight to be accorded all the evidence presented.

■ Where the trial court has heard the evidence and has had the opportunity to judge the credibility of witnesses, we will not set aside the findings of the trial court unless they are clearly erroneous. T.R. 52(A). In determining whether findings of fact are clearly erroneous, we do not reweigh the evidence or determine the credibility of witnesses, but consider only evidence that supports the judgment and reasonable inferences to be drawn from the evidence. *Best v. Best* (1984), Ind.App., 470 N.E.2d 84, 86. Only where the record contains no facts or inferences supporting

ICVA's total expenditures ... By virtue of the receipt of the CIB funds to support and maintain the ICVA, the ICVA is an entity subject to audit by the Indiana State Board of Accounts pursuant to IND.CODE 5–11–1–16(e) and –25 (1987).

17. The State Board of Accounts informed the ICVA on June 23, 1989, that it was subject to audit and that the ICVA should file an Entity Annual Report. The ICVA has never filed an Entity Annual Report.

18. On June 1, 1989, Dunstan A. McNichol, a reporter for The News, submitted a written request to the ICVA for access to the ICVA's expense vouchers under the Indiana Access to Public Funds Act. The request was denied.

*CONCLUSIONS OF LAW*

1. The CIB's funding of the ICVA by allocating a portion of the receipts of the Marion County hotel-motel tax constitutes support and maintenance of ICVA with public funds. The payments to the ICVA are indirect public support, and are not fees for promotional and booking services. The ICVA is therefore subject to audit by the State Board of Accounts.

2. Because the ICVA is subject to audit by the State Board of Accounts, the ICVA meets that definition of "public agency" under the Access to Public Records Act, IND.CODE 5–14–3–2 (1987 and Supp.1989).

3. By carrying out the convention and tourism promotion activities of the CIB, the ICVA is exercising a delegated local government power. In so doing, the ICVA meets another definition of "public agency" under the Indiana Access to Public Records Act, IND.CODE 5–14–3–2 (1987 and Supp.1989).

4. To the extent any of the foregoing conclusions of law are findings of fact, they are specifically incorporated as findings of fact.

the findings are such findings clearly erroneous. Uncontradicted evidence will sometimes support conflicting inferences and, when this is the case, the inferences drawn by the trier of fact will prevail. *A.S.C. Corp. v. First Nat'l. Bank* (1960), 241 Ind. 19, 25, 167 N.E.2d 460, 463–64.

## BURDEN OF PROOF

■■■■■ INI has the burden of proving that ICVA is a "public agency" within the meaning of the Public Records Act. *Steinkuehler v. Wempner* (1907), 169 Ind. 154, 160, 81 N.E. 482, 484 (party seeking benefit of statute must bring himself within its provisions). However, if ICVA is determined to be a "public agency," then it bears the burden of establishing that a requested record is included within one of the categories of records which need not be produced under the Act. IND.CODE ANN. § 5–14–3–1 (West 1989).

## DISCUSSION

*Public Records Act.*

The Public Records Act provides that, subject to certain exceptions not relevant here, any person may inspect and copy the records of any "public agency." IND.CODE ANN. § 5–14–3–3 (West 1989). For our purposes, "public agency" is defined as any entity or office subject to an audit by the State Board of Accounts. IND.CODE ANN. § 5–14–3–2 (West 1989).

The State Board of Accounts is empowered to "examine all accounts and all financial affairs of every public ... entity." IND.CODE ANN. § 5–11–1–9 (West 1989). A "public entity" is defined as any provider of goods, services, or other benefits that is:

(1) maintained in whole or in part at public expense; or

(2) supported in whole or part by appropriations or public funds or by taxation.

IND.CODE ANN. § 5–11–1–16(e) (West 1989). Accordingly, if ICVA were maintained or supported by public monies, as was determined by the trial court and the appellate court, then its records are subject to disclosure.

*Maintain and Support.*

■■■ ICVA challenges the conclusion that it is maintained and supported in part at public expense, claiming that the trial court and the Court of Appeals improperly focused on the status of the payor (the CIB) as a governmental entity, and the amount of the payments from the CIB to ICVA, rather than examining the wording of the contract between those parties and the circumstances under which the payments were made with reference to the contract. ICVA asserts that its relationship with the CIB is strictly a "fee-for-service" arrangement. INI counters that the evidence supports the trial court's conclusion that ICVA was maintained and supported at public expense because the monies received from the CIB by ICVA were in the nature of a grant.

The words "maintained" and "supported" used in IND.CODE § 5–11–1–16(e) are not defined in the statute. Thus, we turn to the rules of statutory construction to determine the meaning of these words. The guiding principles of statutory construction are well known: we are to construe a statute with the act's purpose and scope in mind, *Ind. Dept. of Rev. v. Indpls. Public Trans. Corp.* (1990), Ind., 550 N.E.2d 1277, 1278; statutes are to be examined and interpreted as a whole, giving words their common and ordinary meaning and not overemphasizing a strict, literal or selective reading of individual words, *Spaulding v. Int'l. Bakers Services, Inc.* (1990), Ind., 550 N.E.2d 307, 309.

■■■■ ICVA asserts that the commonly-understood meaning of "maintain" and "support" is "to subsidize" or "to keep in existence," which definition does not include a situation where there is a bargained-for exchange like the fee-for-services arrangement that ICVA contends existed between ICVA and the CIB. We agree with ICVA that a private entity is not maintained or supported by public monies within the meaning of IND.CODE § 5–11–1–9 merely because public monies make up a certain percentage of its revenue. If the relationship is, in fact, a fee-for-services (or goods) agreement then, clearly, an entity is

not maintained or supported by public funds. Otherwise, any entity who performed any service or provided any good for any governmental entity would find its business records available for public inspection under the Public Records Act. We do not perceive this to be the legislature's intent in passing the Public Records Act.

Here, however, we are not convinced that the evidence leads unerringly to the conclusion that the relationship between ICVA and the CIB is a fee-for-services arrangement.

Over the years, ICVA and the CIB have entered into four contracts. In 1967, the contract obligated ICVA to "solicit and book conventions" and obligated the CIB to pay it for such services. In 1978, an agreement required ICVA to "solicit and book conventions" to be held in the "Convention–Exposition Center" and required the CIB to pay ICVA for such services. In 1985, the CIB was audited by the State Board of Accounts. At the conclusion of the audit, the State Board of Accounts recommended that the CIB and ICVA enter into a written contract which memorialized the money being paid to ICVA by the CIB. Pursuant to that recommendation, a written agreement was executed. The preamble to the agreement declared that the "CIB has financially supported the ICVA by allocating a portion of receipts from the hotel-motel tax and by furnishing offices, meeting space, furniture and equipment without cost." The contract also provided that "the CIB [shall] pay to the ICVA annually a portion of the receipts from the Hotel–Motel Tax as determined by the CIB in its annual budget."

Thus, the amount of money paid by the CIB to ICVA was tied to the CIB's receipt of revenues from the hotel-motel tax. Before and after the 1985 contract, the annual allocation amounted to approximately 20% of the receipts from the hotel-motel tax. The amount given to ICVA did not depend on whether it booked a specific number of conventions, filled a set number of hotel rooms or convention days, or on any other objective measure of ICVA's performance.

In fact, whether ICVA received more or less money under the contract in any given year was totally dependent on the amount of the hotel-motel tax collected by the CIB.

ICVA receives from the CIB an amount agreed upon at the beginning of each year. The payments are made in monthly installments. The first eleven installments are computed as $1/12$ of the allotted portion of the projected receipts from the hotel-motel tax. The final installment is adjusted upward or downward to reflect the actual tax receipts in a given year.

ICVA claims that the sole conclusion to be drawn from these facts is that ICVA works on a fee-for-services basis. It claims that the payments are not gratuitous contributions for the general maintenance of ICVA, and that the monies received are not an unrestricted general grant because they must be used to generate tourism and convention business in Marion County.

■ Contrary to ICVA's assertions, we find substantial evidence to support the trial court's findings and conclusions that ICVA was maintained and supported by the CIB. There is no dispute here that the CIB is a public agency within the meaning of the Public Records Act, and that the monies paid by the CIB to ICVA are public funds. The contract recited that the CIB has "financially supported" ICVA by allocating tax receipts and by furnishing other business-related needs without cost. ICVA's federal tax returns describe the monies received from the CIB as "indirect public support" under the headings of "contributions, gifts, grants and similar amounts received." None of the documents from the CIB or ICVA described the payments as fees for promotional or booking services. There is no reference in the minutes of the CIB's meetings that the payments to ICVA were for promotional and booking services. ICVA receives payments each month regardless of whether it books any conventions in that month and regardless of the amount of time spent by its employees encouraging tourism in Marion County. The payments are purely a function of the amount of tax collected by the CIB. There is no direct relationship to

the amount of services performed by ICVA. Once the CIB commits to pay ICVA a certain amount of money for the year, ICVA's performance (or lack thereof) does not directly affect the amount it receives. No effort is made to allocate to ICVA that portion of the hotel-motel tax which its activities helped to generate. The amount of the payment was not negotiated. The CIB determined what percentage of the hotel-motel tax would be paid to ICVA. Finally, itemized claims for the payments, required by IND.CODE ANN. § 36–10–9–9(d) (West Supp.1990), were not submitted by ICVA. We do not agree with ICVA that the contractual requirement that "ICVA shall report to the CIB semiannually on its promotional activities" satisfies the requirements of this statute.

ICVA points to *Kneeland v. Nat'l Collegiate Athletic Assoc.* (1988), 5th Cir., 850 F.2d 224, in support of its argument that the arrangement between CIB and ICVA did not transform a private corporation into a public entity merely because it received tax dollars. *Kneeland* involved a suit by various broadcasters and newspapers against the NCAA and the Southwest Athletic Conference to compel disclosure of information relating to alleged misconduct by member institutions. The Fifth Circuit held that neither entity was a governmental entity and, therefore, neither was subject to the Texas Open Records Act. 850 F.2d at 231. Although the entities received public funds, their members received a *quid pro quo* in sufficiently identifiable and measurable quantities of services for any public fund expenditures. 850 F.2d at 230. The court in *Kneeland* acknowledged that these cases are "fact sensitive" and we agree. Here, however, unlike in *Kneeland*, the CIB was contractually obligated to support ICVA with a fixed percentage of money without regard to ICVA's performance under the contract. The amount of money ICVA received did not depend on the performance of ICVA, but rather depended on the amount of tax collected by the CIB.

ICVA warns of far-reaching negative consequences if we allow public access to their business records. ICVA warns that finding it subject to the Public Records Act means that any company which does business with a governmental entity will find its records and meetings open to the public, and that this will impose a detriment on those businesses because its competitors will now have access to private information such as marketing information.

We do not agree that such a result is mandated by our decision today. First, a company will not, merely because it does business with a governmental entity, be automatically subject to the Public Records Act. In situations involving a *quid pro quo*, that is, measured goods or services given in exchange for payment based on identifiable quantities of goods or services, a private entity would not be transformed into a public entity because it would not be maintained and supported by public funds.

ICVA asserts that its right to privacy will be violated by our decision because it will be put at a competitive disadvantage (its competitors will have access to its marketing information) and because the public's "need to know" is minimal. We do not agree with ICVA. The Legislature has, by passing the Public Records Act, indicated that the public is entitled to "full and complete information regarding the affairs of government" and has stated that the act "shall be liberally construed to implement this policy." IND.CODE § 5–14–3–1. Nevertheless, the holding today is that only those entities which are maintained and supported by public funds as defined by this opinion will have their records subject to public review.

ICVA also argues that our interpretation of the statute renders it void for vagueness because it did not have adequate notice that it was subject to its terms "merely by virtue of contracts with the governmental bodies." It claims that the line of demarcation between those entities which are subject to the Public Records Act and those which are not is not sufficiently delineated. We find no evidence in the record to support this claim.

ICVA also challenges the conclusion that it provides a benefit to the public.

IND.CODE § 5–11–1–16(e) requires that the entity be a "provider of goods, services or other benefits." ICVA argues that the inclusion of the word "other" shows an intention by the Legislature to limit the meaning of the terms "goods" and "services" to a type of benefit traditionally provided by government. ICVA claims it is not such a provider of traditional benefits because it is not providing social services such as assistance to the poor or the infirm. We find no cases having previously interpreted this term. We conclude that because ICVA's admitted function was to generate revenue through the hotel-motel tax and to attract conventions to the convention center and the Hoosier Dome, that the public benefit of this activity is obvious. Clearly, ICVA provided services and benefits as contemplated by IND.CODE ANN. § 5–11–1–16(e) (West Supp.1990).

*Date Restriction on Access to ICVA's Records.*

■ The Court of Appeals decided that the right of access to records under the Public Records Act did not arise until ICVA had been notified by the State Board of Accounts that it was subject to audit on June 23, 1989. For that reason, the court restricted INI's access to ICVA's expense reports to those created after June 23, 1989. In essence, the opinion of the Court of Appeals conditions the finding that an entity is a "public agency" on whether the entity has been notified by the State Board of Accounts that it was subject to an audit. This notice requirement does not appear in the Public Records Act or statutes relating to the State Board of Accounts.

The Public Records Act expressly states that an entity *subject to* an audit by the SBA meets the definition of public agency. IND.CODE § 5–14–3–2(3) (emphasis added).

As enacted by the general assembly, the Public Records Act does not require notice to an entity that it is subject to audit.

Similarly, the State Board of Accounts statute prescribing who is subject to audit does not suggest that there is any notice requirement or that entities are not subject to an audit until they are so informed by the State Board of Accounts. Rather, ICVA is subject to audit by operation of law because it meets the statutory definition of public entity, viz., being maintained and supported by public funds. Because it is a public entity, its records are available to public inspection.

Having determined that ICVA is a public entity under the Public Records Act because it is subject to audit by the SBA by virtue of the public funds that have maintained and supported it, we now determine whether there is a date restriction applicable to ICVA's records. INI claims that it is entitled to the expense records back to 1978 as originally requested. ICVA, on the other hand, claims that if the records are available at all, they are available only from 1986 forward.

ICVA urges us to give the Public Records Act prospective application, and we agree. "Absent strong and compelling reasons, prospective application of laws, rules and regulations is the normal construction to be given." *Manns v. State Dept. of Hwys.* (1989), Ind., 541 N.E.2d 929, 936. The Public Records Act created a right of the public to obtain access to records of a private not-for-profit corporation. Thus, ICVA was transformed into a public agency when the Public Records Act was passed in 1984. Prior to that time, the statute regulating disclosure of public records was found in IND.CODE ANN. § 5–14–1–3 (West 1987), which limited access to records kept by administrative bodies or agencies of the state or a political subdivision.[3] We conclude that ICVA would not have come within this definition and, therefore, its records were not available prior to the passage of the Public Records Act in 1984.

---

**3.** The statute provided: Right of inspection of public records. Except as may now or hereafter be otherwise specifically provided by law, every citizen of this state shall, during the regular business hours of all administrative bodies or agencies of this state, or any political subdivision thereof, have the right to inspect the public records of such administrative bodies or agencies, and to make memoranda abstracts from the records so inspected.

Accordingly, we conclude that the public's right, including that of INI, to records of ICVA began June 1, 1984, the effective date of the Public Records Act.

## CONCLUSION

Accordingly, we now grant transfer, vacate the opinion of the Court of Appeals, affirm the trial court's judgment to the extent that it finds ICVA is subject to the Public Records Act after June 1, 1984.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.