**CITY OF EVANSVILLE, Indiana and Evansville Police Merit Commission, Appellants–Defendants,**

v.

**William S. BRAUN, Kenneth Taylor, Richard Hubbard, on Behalf of Themselves and All Others of the Evansville Police Department Similarly Situated, Appellees–Plaintiffs.**

No. 82A01–9301–CV–23.

Court of Appeals of Indiana, First District.

Aug. 31, 1993.

---

Allan G. Loosemore, Jr., Evansville, for appellants-defendants.

Robert J. Pigman, Charles L. Berger, Berger and Berger, Evansville, for appellees-plaintiffs.

ROBERTSON, Judge.

This is an appeal upon a judgment in favor of plaintiffs, William S. Braun, Kenneth Taylor, Richard Hubbard and all other members of the Evansville Police Department similarly situated after a bench trial on the officers' complaint against the City of Evansville and the Evansville Police Merit Commission. The officers alleged in their complaint that the City had breached its contract with the officers by failing to pay probationary officers overtime for time spent at the Indiana Law Enforcement Academy and various meetings with the Evansville Police Merit Commission and the Police Personnel and Training Unit.

The City of Evansville argues in this appeal that the trial court's findings that probationary officers were members of the Evansville police department who were covered by the contract; that the officers were entitled to overtime compensation for the overtime incurred as a consequence of required training at the Indiana Law Enforcement Academy; that the City and the Fraternal Order of Police had entered into contracts since 1974; and, that complete records were available for each of the members within the class are clearly erroneous. In addition, the City argues that the trial court's conclusion it had failed to prove laches is clearly erroneous.

We affirm.

The trial court found the facts specially and stated its conclusions thereon pursuant to Ind.Trial Rule 52(A). Where the trial court has heard the evidence and has had the opportunity to judge the credi-

bility of witnesses, we will not set aside the findings of the trial court unless they are clearly erroneous. *Indianapolis Convention & Visitors Ass'n, Inc. v. Indianapolis Newspapers, Inc.* (1991), Ind., 577 N.E.2d 208, 211; T.R. 52(A). In determining whether findings of fact are clearly erroneous, we do not reweigh the evidence or determine the credibility of witnesses, but consider only evidence that supports the judgment and reasonable inferences to be drawn from the evidence. *Indianapolis Newspapers*, 577 N.E.2d at 211. Only where the record contains no facts or inferences supporting the findings are the findings clearly erroneous. Uncontradicted evidence will sometimes support conflicting inferences and, when this is the case, the inferences drawn by the trier of fact will prevail. *Id.*

■■■ The intention of the parties controls our decisions regarding the substance of agreements. That intention is expressed by the clear language of the contract. A court will not construe an unambiguous contract. Where the terms of the contract are clear, the court merely applies its provisions. Unambiguous language is conclusive upon the parties and the courts. We must effectuate the intent of the parties. *Scott v. Anderson Newspapers* (1985), Ind. App., 477 N.E.2d 553, 559. Language in a contract is given its plain and ordinary meaning, *Romain v. A. Howard Wholesale Co.* (1987), Ind.App., 506 N.E.2d 1124, 1126, unless the contract indicates otherwise.

■■■ The contract at issue identifies the parties to the agreement as the City of Evansville through certain named persons or bodies and the

> Members of the Police Department of the City of Evansville Indiana: A vote shall be taken at Police Headquarters ... on the said Contract by the Fraternal Order of Police, Evansville Lodge No. 73. Inc., at which time members of the Evansville Police Department, hereinafter called "employees" shall vote on said Contract and the terms thereof and shall be ap-

proved by simple majority vote ... The Board of Directors of the F.O.P. shall sign the Contract on behalf of the employees.

The next two sections of the contract provide:

Article I. "PREAMBLE"

> This Agreement is entered into between the City of Evansville ... and Evansville Lodge No. 73, Inc., hereinafter referred to as "Employees". It is the purpose of this Agreement to achieve and maintain harmonious relations between the Employer and Employees of the Evansville, Indiana Police Department.[1]

Article II. "RECOGNITION"

> The Employer recognizes the F.O.P. as the exclusive bargaining agent for all police officers on the payroll of the Evansville Police Department during the term of this Agreement who are covered by the Pension Law, but excluding the Chief of Police, said employees hereinafter referred to as the bargaining unit.

The specific agreements of the parties follow immediately after these sections.

On its face, the agreement recognizes two distinct groups of police officers: the members of the department ("employees") who for purposes of the contract are represented by the Fraternal Order of Police ("Employees") and are a party to the agreement, and all police officers on the payroll covered by the Pension Law (the bargaining unit) for whom the Fraternal Order of Police is recognized as the exclusive bargaining unit. Unambiguously, the contract states that the parties to the agreement are the members of the police department, not the members of the bargaining unit. No reasonable person would find this contract to be subject to more than one interpretation on this question.

The City of Evansville argues that probationary officers are not parties to this contract as they are not members of the de-

---

1. The typeface distinction between "employees" and "Employees" continues throughout the agreement. For example, the section on wages contains the word employees in both upper and lower case.

partment as that term has been defined for purposes of police pension and disability law, citing *State ex rel. Hensley v. Cooley* (1970), 254 Ind. 453, 260 N.E.2d 598. But, *Cooley* holds only that certain statutory provisions governing police pension and disability benefits did not apply to probationary members of a police department; the decision says nothing about whether police departments may nevertheless enter into agreements governing other aspects of a city's employment relationship with probationary employees or whether the City of Evansville has done so in the present case. Moreover, since the decision in *Cooley*, the legislature has itself defined the term "member of the police department" for purposes of local government law. Now, with one exception, a police officer is an officer appointed to the department. Ind. Code 36–8–1–9 (1981) (amended 1992). In governmental units with a merit system established under the authority of I.C. 36–8–3.5–1, an officer with a probationary status has nevertheless been appointed. I.C. 36–8–3.5–12.

Inasmuch as the police contract with the City of Evansville does not reflect an intent to exclude probationary employees from coverage generally, and does not define the term "member," the trial court applied the word's plain and ordinary meaning and concluded that the department's probationary employees were members of the department whose employment relationship with the department would be governed by the contract. Since the contract expressly restricts the availability of certain benefits to nonprobationary employees, but contains no such express limitations in its overtime provisions,[2] the trial court concluded that the parties did not intend to restrict overtime pay to nonprobationary officers.

We cannot find fault with the trial court's reasoning. The contract's provisions relating to overtime apply to "employees" and "Employees," not the bargaining unit. It was thus appropriate for the trial court to determine whether a probationary officer is a member of the department, i.e. an employee, and apply the contract's provisions relating to overtime accordingly.

The trial court found as a fact that the plaintiffs became "members" of the police department by completing a series of tests, being ranked upon a list and chosen from the list upon the occurrence of a vacancy within the department. Each of the plaintiffs began receiving pay from the Evansville Police Department on the date he was sworn in by the department as police officers and received a badge, uniform and firearm. Each probationary officer worked full time, eight hours a day, five days a week for the department beginning the date each officer was sworn in by the department. During the first year of service, and therefore, the probationary period, each officer was assigned to the motor patrol division of the department and made arrests, apprehended criminals, patrolled the streets, made emergency runs, appeared in court and testified. The trial court specifically found that first year officers who are serving their probationary period are members of the Fraternal Order of Police and given full voting rights by that organization, including the right to vote on any contract with the City of Evansville.

2. The contract provision concerning overtime reads in pertinent part as follows:

Overtime earned will be reimbursed to the police officer either in money or compensatory time off from duty. The employer does hereby guarantee that twenty-five thousand dollars ($25,000) has been allocated and approved for the payment of overtime to employees by City budget ordinance and that said sum shall be available for the payment of overtime for the following categories: General Overtime and Stand-by Overtime. All other overtime shall be taken as specified below

(1988). All employees, within three (3) weeks of incurring General or Stand-by Overtime, shall request the payment of compensation for such overtime or such overtime shall be added to their compensatory time bank. The decision to be paid or take compensatory time shall be the choice of the employee. When the funds described are depleted, all compensation for overtime shall be in the form of compensatory time off.

The contract then defines the four types of overtime and manner of accrual.

The City does not take issue with any of these factual findings, which we have found to be supported by evidence of record. These factual findings all support the trial court's ultimate determination that the plaintiff probationary officers were functioning as members of the Evansville Police Department as the term "member" is commonly employed and understood.

The City of Evansville makes the assertion in its brief that up until the time the officers brought their complaint, the parties did not consider probationary officers to be entitled to overtime compensation. The evidence does not require such a conclusion. Officers Braun, Taylor, and Hubbard testified that they were compensated for overtime during their probationary periods. They just were not compensated for overtime while they were at the academy or attending certain required meetings.

■ The City argues that the trial court's findings which date the existence of a contract with substantially similar terms to 1974 are clearly erroneous. The officers do not offer any citation to the record in support of these findings. Our review discloses that while Officer Cook "originally thought" that the first contract between the parties was entered into in 1974 or 1975, the earliest contract Officer Cook could find became effective January 1, 1976. Accordingly, under the authority given this court by virtue of Ind.Appellate Rule 15(N), we order that the findings be corrected to reflect that the agreements have been in effect since January 1, 1976. Relief should be granted from that date forward.

■ Lastly, the City argues that the trial court's findings that the City had complete records showing when each member of the class attended Saturday morning Personnel and Training meetings and Police Merit Commission meetings and that the City had failed to meet its burden of proving its affirmative defense of laches are clearly erroneous. With respect to the Saturday morning meetings, the evidence offered at trial shows that each officer had attended two meetings during the period when he or she was at the police academy. The dates of a particular officer's period of training at the academy could be acquired by the City from the Indiana Law Enforcement Training Board. As for the Police Merit Commission meetings, the record reflects that each officer's personnel file would contain a directive which would disclose the number of times the officer appeared before the Commission, but time sheets completed prior to 1984, which would reveal whether or not the officer was on duty at the time, had probably been destroyed. Nevertheless, Lt. Paddock testified that, while it would be very cumbersome for the department, it would be possible to go back and determine whether an officer was on or off duty when he or she was called before the Merit Commission for a training review. The evidence thus supports conflicting inferences on the question of whether the department had complete records; certainly, the inference in favor of the trial court's resolution of the question supports the conclusion that the City's records were sufficiently complete to permit recovery by the officers.

■ To obtain reversal of the trial court's determination that the City failed to prove its affirmative defense of laches, the City must prove that the evidence is without conflict and leads to but one conclusion, a conclusion opposite of the one reached by the trial court. For laches to have applied, the City must have shown both that the officers unreasonably delayed in seeking relief and that the City sustained actual prejudice as a consequence of the delay. *See generally Lacy v. State* (1986), Ind., 491 N.E.2d 520, 521.

■ The record reflects that at the time Lt. Paddock was working in the personnel and training division of the department, time sheets were being kept for five years and then were destroyed. Even so, in January, 1992, when Lt. Paddock left the division, time sheets dating back to 1984 were still available. By his own admission, Lt. Paddock had not checked to see what records the division did have or whether alternative sources for the information might be available. Moreover, as we stated above,

Lt. Paddock testified that it would be possible to determine whether an officer was on or off duty when he or she appeared at Merit Commission meetings.

The evidence is thus not without conflict. At best, the evidence which is favorable to the City is such an extremely small quantum of evidence that prejudice by reason of the delay cannot be inferred as a matter of law. *Cf. id.*

With the exception of the trial court's findings that the City had a contractual obligation to pay probationary officers overtime beginning in January, 1976, the City has failed to demonstrate that any of the trial court's factual findings are clearly erroneous or that its conclusion the City has failed to prove laches is contrary to law. The judgment is therefore not clearly erroneous and with the exception mentioned above, should be affirmed.

Judgment affirmed and this cause remanded with instructions.

BAKER and SHIELDS, JJ., concur.