Ralph B. RIFFLE, Jr., Appellant–
Plaintiff,

v.

KNECHT EXCAVATING, INC., d/b/a Star Excavating, Knecht Excavating, Inc., Jeffrey J. Rittenhouse, Indiana Department of Transportation, State of Indiana, Appellees–Defendants.

No. 35A02–9312–CV–659.

Court of Appeals of Indiana,
Third District.

Feb. 22, 1995.

Transfer Denied June 15, 1995.

Frank J. Gray, Travis S. Friend, Beckman, Lawson, Sandler, Snyder & Federoff, Fort Wayne, for appellant.

Norman T. Funk, Michael G. Getty, Hill Fulwider McDowell Funk & Matthews, Indianapolis, for Knecht Excavating, Inc., d/b/a Star Excavating.

Edward L. Murphy, Jr., Mark E. Witmer, Miller Carson Boxberger & Murphy, Fort Wayne, for Jeffrey J. Rittenhouse.

Mark W. Baeverstad, Daniel J. Palmer, Hunt, Suedhoff, Borror & Eilbacher, Fort Wayne, for Indiana Dept. of Transp. and State of Ind.

## OPINION

STATON, Judge.

Ralph Riffle ("Riffle") appeals the entry of summary judgment in favor of Knecht Excavating, Inc. d/b/a Star Excavating ("Star Excavating"), Jeffrey Rittenhouse ("Rittenhouse"), and the Indiana Department of Transportation ("Indiana"). Riffle raises two issues on appeal which we restate as follows:

I. Whether the trial court erred in granting summary judgment to Rittenhouse and Star Excavating since a genuine issue of material fact exists whether Rittenhouse and Riffle were fellow employees.

II. Whether the trial court erred in granting summary judgment to Indiana by holding that Indiana owed no duty to Riffle under his negligence claim.

We affirm.

The facts most favorable to the nonmovant, Riffle, are as follows. Riffle was injured while working on a construction site for his employer, McMahon–O'Connor ("MO"). Riffle sustained injuries when struck by a large chunk of earth that dislodged from the wall of the twenty-foot-deep hole Riffle was working in. The construction site was part of a highway project in Wabash County which Indiana hired MO to complete. Indiana owned the property upon which the accident occurred and had an on-site inspector, Carl Comerford ("Comerford"), assigned to the project. Comerford was present when the accident occurred.

Elmer Douglas ("Douglas") was the MO job superintendent in charge of the project. As part of the construction, MO had to dig an enormous hole to set a manhole. Two weeks before the accident, MO rented a track-driven backhoe and an operator, Rittenhouse, from Star Excavating for concrete demolition. Douglas set forth the dimensions and told Rittenhouse to dig the hole; Rittenhouse dug according to Douglas' directions. It was MO's decision not to use a protective "trench box" in the hole. The accident occurred after Riffle and others entered the hole to install a wooden form on which to pour concrete.

Riffle, clearly barred from suing MO or Douglas by the Worker's Compensation Act ("Act"), sued Rittenhouse, Star Excavating, and Indiana. All three defendants sought and received summary judgment. This appeal ensued.

## I.

### *Summary Judgment for Rittenhouse and Star Excavating*

Riffle first argues that the trial court erred in granting summary judgment to Rittenhouse and Star Excavating. Riffle argues that Rittenhouse was not a borrowed servant of MO and, thus, Riffle's suit against Rittenhouse and Star Excavating, via respondeat superior, is not barred by the Act.

■ Summary judgment is appropriate only when the movant proves there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369, 1371. At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

■ When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Collins v. Covenant Mut. Ins. Co.* (1992), Ind.App., 604 N.E.2d 1190, 1194. We may sustain a summary judgment on any theory supported by the designated materials. T.R. 56(C).

■ For the trial court to exercise jurisdiction over the underlying negligence claim, the accident must fall outside of the exclusivity provision of the Act. The Act bars suits against the claimant's employer and fellow employees where the accident arose out of,

and was incidental to, the employment. Ind. Code §§ 22–3–2–6, –13; *Weldy v. Kline* (1993), Ind.App., 616 N.E.2d 398, 401–402, *reh. denied.* The test of whether Rittenhouse and Riffle are fellow employees is whether Rittenhouse could receive worker's compensation from MO had he been injured under similar circumstances. *Id,* at 403. Our analysis thus turns to whether Rittenhouse was an employee of MO under the Act.

■ The Act defines employee as:

[e]very person ... in the service of another, under any contract of hire ... written or implied, except one whose employment is both casual and not in the usual course of the trade, business, occupation, or profession of the employer.

I.C. § 22–3–6–1(b) (1993). Our supreme court has interpreted this definition to consider as "employee" all persons for hire unless the employment was both casual and not in the usual course of the employer's trade. *Hale v. Kemp* (1991), Ind., 579 N.E.2d 63, 67.

MO employed Rittenhouse in the usual course of their business. Rittenhouse performed precisely the same type of work that MO's regular employees performed. Further, Rittenhouse's employment with MO was not casual. Rittenhouse reported each morning to Douglas to receive his instructions. He was employed for an indefinite period of time and given specific instructions as to the hole's dimensions, sloping, and safety precautions, effectively leaving Rittenhouse no discretion. Thus, Rittenhouse was an MO employee under the Act.

Riffle argues that the dual nature of Rittenhouse's employment with both Star Excavating and MO precludes summary judgment. Riffle argues that the question of which employer controlled Rittenhouse's conduct is one for the jury. This court's opinion in *Sharp v. Bailey* (1988), Ind.App., 521 N.E.2d 368, is instructive on this issue. In *Sharp*, Bailey and Sharp were involved in a truck-to-truck collision. Bailey owned the truck he was driving and Adams Trucking owned the truck Sharp was driving. Both trucks were leased to Jack Grey Transport at the time of the collision and were being operated as part of Jack Grey Transport's business. Bailey sued Sharp, then Sharp sought and received summary judgment. *Id,* at 369. The court concluded that, though Sharp worked for both Jack Grey Transport and Adams Trucking, at the time of the collision he was engaged in duties for Jack Grey Transport. The court affirmed summary judgment for Sharp holding that Bailey and Sharp were in the same employ and Bailey's suit was barred under the Act. *Id,* at 370.

The *Sharp* case is similar to the case at bar. As with Sharp, Rittenhouse was hired to perform the type of work that MO's regular employees perform. Further, Rittenhouse was a leased employee serving on a temporary basis. Both Sharp and Rittenhouse were paid by their permanent employer. *Id,* at 369. Rittenhouse was clearly performing duties for MO when digging the trench.

We conclude that Rittenhouse's employment with MO was not casual, was in the usual course of MO's business, and Rittenhouse was controlled by MO. As such, Rittenhouse was a fellow employee of Riffle at the time he dug the hole and Riffle is barred from suing Rittenhouse.[1]

■ Riffle's action against Star Excavating was based entirely on respondeat superior. Since Rittenhouse cannot be held liable, no action based solely on respondeat superior is maintainable against his employer, Star

---

1. Riffle phrased his argument in terms of the "borrowed servant" doctrine. Riffle argues through the three tests set out in *New York Central R. Co. v. NIPSCO* (1966), 140 Ind.App. 79, 221 N.E.2d 442, 446, *reh. denied,* to wit: (1) "whose business" test, (2) "control" test, and (3) "scope" test. *New York Central R. Co.* did not arise under the Act and we find the tests less than helpful. More recent cases decided under the Act cite seven factors to determine the existence of an employer-employee relationship, to wit: (1) right to discharge, (2) mode of payment, (3) supplying tools and equipment, (4) belief of the parties, (5) control over the means used and results achieved, (6) length of employment, and (7) establishment of work boundaries. *Hale, supra.* As noted by our supreme court, the cases employing these factors are largely irreconcilable. *Id.* Under either method, however, the above facts lead to the conclusion that Rittenhouse was in MO's employ and under MO's direction when digging the hole.

Excavating. *Id,* at 371. Summary judgment was properly entered for Star Excavating.

## II.

### *Summary Judgment for Indiana*

Riffle next argues that the trial court erred in entering summary judgment for Indiana. Riffle argues that Indiana is potentially liable for the accident because they have a common law duty as a landowner and assumed a contractual duty.

■■■■ The existence of a duty is generally a question of law. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995, *reh. denied.* Summary judgment is appropriate where there is no duty as a matter of law. *Id,* at 998. Riffle argues for the creation of a new common law landowner duty to protect contractor's employees. To succeed in imposing a new duty, Riffle must present a compelling argument under the following factors: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Id,* at 995.

■■■■ We first look to the relationship of the parties. Riffle was an employee of an independent contractor working on land owned by Indiana. When injury is caused by a dangerous instrumentality controlled by a contractor, a property owner generally owes no duty to the contractor's employees. *Barber v. Cox Communication, Inc.* (1994), Ind. App., 629 N.E.2d 1253, 1259. To establish a duty, the employee must show the landowner assumed control of the dangerous instrumentality or had superior knowledge of the potential dangers involved. *Id.*

■■■■ Riffle attempts to establish that Indiana assumed control through contractual language allowing Indiana to stop the work should it not meet specifications. Riffle's argument fails as the power to inspect, supervise work, and stop work in progress does not establish a duty to exercise care for the contractor's employees. *Alexander v. City of Shelbyville* (1991), Ind.App., 575 N.E.2d 1058, 1060, *trans. denied.*

To establish superior knowledge, Riffle argues that Comerford admitted knowing the proper method of digging holes and that Indiana admitted MO's negligence. Both statements misconstrue the record. Comerford only admitted knowledge of final grades and slopes appropriate when constructing a highway. We cannot infer from this language that he knew about safety precautions for deep-hole digging.[2] As to the second contention, Indiana only hypothetically presumed that MO was negligent.

The above facts are undisputed by the designated materials and all possible inferences to be drawn therefrom. Taking this into account, the parties' relationship does not favor imposing a common law duty upon Indiana.

Next, we examine the foreseeability of harm. As stated, the hole was an instrumentality in the sole control of MO at all relevant times. Only Douglas and Rittenhouse testified to having extensive knowledge of hole safety. Riffle has designated no evidence which would indicate that Indiana, much less any other landowner, should have foreseen the danger to Riffle under the circumstances. The foreseeability factor does not favor Riffle.

Finally, we look to public policy concerns. We see no persuasive public policy argument for imposing a duty upon a landowner to guard a contractor's employees from an instrumentality exclusively controlled by the contractor. Generally, a contractor has the superior experience, equipment, knowledge, staff, and incentive to protect their employees. As this court has noted, "[c]haos would reign supreme on any job where several [entities] with divergent concepts of safety might take seriously their supposed duty to supervise the safety practices of themselves and each other." *Teitge v. Remy Const. Co., Inc.* (1988), Ind.App., 526 N.E.2d 1008, 1012.

Balancing the above factors, we are unpersuaded by Riffle's argument. Thus, Indiana is not potentially liable under a theory of common law landowner liability.

■■■■ We next analyze whether Indiana has assumed a contractual duty of care.

---

**2.** We also note that contractual provisions regarding trench safety do not establish knowledge of the dangers posed. *Cummings v. Hoosier Ma-* *rine Properties, Inc.* (1977), 173 Ind.App. 372, 363 N.E.2d 1266, 1274, *trans. denied.*

When examining a contract we do not look at any provision in isolation but examine the contract as a whole. *Alexander, supra.* Even though Indiana reserved multiple powers to inspect and stop nonconforming work, project safety was reserved for MO. Where provisions of a contract delegate project safety to a contractor, others are generally free from such responsibility. *Id.* Even where the landowner assumes a duty to ensure compliance with specifications, retains the power to stop the work for noncompliance, and has a duty to inspect, the contractually designated party is responsible for on-site safety. *Id.* Riffle has advanced no sound argument to alter this established precedent. Thus, Indiana assumed no contractual duty to protect Riffle.[3]

For all of the above reasons, summary judgment was properly entered in favor of Rittenhouse, Star Excavating, and Indiana. The judgment is affirmed.

FRIEDLANDER and DARDEN, JJ., concur.

---

**3.** Riffle presents the equally ineffective argument that Indiana had a duty to force MO's compliance with IOSHA trench safety requirements. While the contract did require compliance with IOSHA requirements, we see no basis for imposing liability on Indiana for contractually requiring MO to perform work in a manner in which they were already legally required. I.C. § 22–8–1.1–3.1 (1993).