GEORGE UZELAC & ASSOCIATES, INC., Appellant–Plaintiff,

v.

Michael A. GUZIK, Appellee–Defendant.

No. 64A03–9503–CV–78.

Court of Appeals of Indiana.

March 29, 1996.

Fred M. Cuppy, Kathryn D. Schmidt, Burke, Murphy, Costanza & Cuppy, Merrillville, for appellant.

Michael C. Harris, Scott M. Rafferty, Harris Welsh & Lukmann, Chesterton, for appellee.

## OPINION

HOFFMAN, Judge.

Appellant-plaintiff George Uzelac & Associates, Inc. appeals a negative judgment in favor of appellee-defendant Michael A. Guzik. The evidence relevant to the appeal is recited below.

George Uzelac & Associates, Inc., a property tax consulting firm, is operated by George Uzelac. The consulting firm analyzes the assessed valuation of commercial and industrial property to determine whether a client's property has been correctly assessed. If errors are discovered, the firm files appeals on behalf of the clients.

The firm employs sales representatives to acquire new clients. Guzik began work as a sales representative for the firm in July 1992. He signed an employment contract which included provisions for *inter alia* compensation on a commission basis, duties upon termination and non-competition. The compensation clause allowed employees to obtain advances on commissions, then make adjustments to the advanced amounts based upon the commissions actually earned once the firm provided an "accounting ... [of the] first calendar year commissions."

In February or March 1993, Guzik left employment with the firm. During the seven-month period of employment, Guzik obtained advances of approximately $8,800.00. The firm did not provide an accounting. The firm filed a complaint for return of the advances based on the contract.

Guzik filed a counterclaim which, according to the material in the record, was taken under advisement. The parties do not argue any error based upon the counterclaim.

After a trial without the intervention of a jury, the trial court determined that the contract did not provide for repayment of advances after termination of employment. The court denied recovery to the firm. This appeal ensued.

The firm raises issues for review alleging errors in the admission of parol evidence. However, as restated, the dispositive issue is whether the trial court's finding that the contract does not provide for repayment of advances in the present case is clearly erroneous and contrary to law.

The firm is appealing from a negative judgment. When reviewing an appeal from a negative judgment, the cause will be reversed only if the judgment is contrary to law; that is, the evidence is without conflict and leads to but one conclusion which is contrary to that reached by the trial court. *Calumet Nat. Bank v. Amer. Tel. & Tel.*, 647 N.E.2d 689, 690–691 (Ind.Ct.App.1995). In determining whether the decision is contrary to law, this Court will neither reweigh the

evidence nor judge the credibility of witnesses. *Matter of Paternity of K.M.,* 651 N.E.2d 271, 276 (Ind.Ct.App.1995).

Absent ambiguity, the terms of a contract will be given their plain and ordinary meaning. The terms of a contract are not considered ambiguous merely because controversy exists between the parties concerning the proper interpretation of terms. Where terms are clear and unambiguous, they are conclusive and this Court will not construe the contract or view extrinsic evidence, but will instead apply the contractual provisions. *Ostrander v. Bd. of Directors, Porter,* 650 N.E.2d 1192, 1196 (Ind.Ct.App. 1995).

Here, as found by the trial court, the terms are unambiguous. The provision, which requires an *employee* to return excess advances not earned after an accounting is provided, does not make any provision for non-employees or former employees who have left employment with the firm. The portions of the contract regarding duties upon termination of employment do not refer to reimbursements.

In relevant part, the contract states:

"As compensation for services, Company shall pay employee a commission based upon fees resulting from the contracts and/or business from client obtained for Company through the primary sales efforts of employee for first year tax savings only. Employee will not be entitled to any commission or any other compensation resulting from any other income received by or on behalf of Company, including client property tax refunds for prior years and/or client property tax savings for future years, regardless if the client was obtained for Company through the primary sales efforts of employee. Said commissions will be in the amount of thirteen percent (13%) of said fees received by Company from time to time during the actual period employee is in the employ of Company from the clients obtained for Company through the sales efforts of employee. Employee shall receive an advance towards to [sic] commissions based upon the following formula: 85% of monthly commissions based upon the Company's tax staff projections of first year consultant fees which are adjusted semi-annually (June 20th-December 20th), to be commissions based on actual first year tax savings only consultant fees, less any advances of commissions paid to employee by Company. Said advances, however, shall be deducted from commissions ultimately due and shall be paid on a monthly basis. If employee, however, is advanced more monies than he earns for the calendar year, then employee shall reimburse same to Company within thirty (30) days after employee has been furnished an accounting by the Company of his first calendar year commissions...."

According to the firm, the provision is not complex and need not be construed because the terms are unambiguous. The firm contends that although no accounting was ever supplied by the firm, Guzik earned only $130.00 for his work from July 1992 through February 1993 because all other clients obtained by Guzik did not realize tax savings during the time of Guzik's employment. Under the contract provisions, sales representatives earned remuneration solely through commissions. The firm paid commissions when two conditions were met: 1) the client obtained by the sales representative actually realized tax savings and 2) the sales representative who obtained the client was still in the employ of the firm. Accordingly, if the firm did not quickly commence the process whereby clients realized a tax savings or when a lengthy process was required for a tax savings, the sales representatives were not entitled to commissions for years after acquiring the clients.[1] Thus, when Guzik left the employ of the firm, the potential commissions inured to the benefit of the firm.

Interestingly, the firm bases its request for return of approximately $1,000.00 per month in unearned commissions upon one phrase within the document. Then, the firm

---

1. Commissions are paid only on first year tax savings when the first year tax savings are actually realized. However, they may not be realized until years after clients are obtained. This is so due to delays by the firm in initiating administrative and/or judicial proceedings for redetermination, and due to the lengthy process between initiation and final resolution.

ignores its failure to comply with the terms of the provision requiring it to furnish an *employee* with an accounting. Further, the firm would have the term *employee* include an ex-employee by implication. As distilled, the firm desires the contract to be read as written only as to the portions of the provisions favorable to its position.

However, if the firm desires terms to be construed differently than written, the contract does require construction. Ambiguous contracts are construed against the drafter. *See Fresh Cut, Inc. v. Fazli,* 650 N.E.2d 1126, 1132 (Ind.1995). The firm drafted the contract. Also, when examining a contract it is viewed as a whole, not each item in isolation. *Riffle v. Knecht Excavating, Inc.,* 647 N.E.2d 334, 339 (Ind.Ct.App.1995). Thus, the firm's position that only the obligations it intended to impose upon Guzik are proper is not sustainable whether the contract is viewed as ambiguous or unambiguous.

The trial court did not err in finding the contract unambiguous and determining that the contract, as written, is silent as to whether former employees must repay advances. The firm's other issues, including allegations of error in admission of extrinsic evidence, are moot. The trial court did not rely on evidence outside of the contract.

The trial court's judgment is affirmed.

Affirmed.

CHEZEM, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I dissent. The trial court erred when it found that Guzik was not required to repay the advances to the extent they exceeded earned commissions. The Majority's affirmance compounds the error and is contrary to law.

A trial court's judgment is contrary to law if the evidence, viewed in the light most favorable to the trial court, leads incontrovertibly to a conclusion opposite to the one reached by the trial court. *Romain v. A. Howard Wholesale Co.,* 506 N.E.2d 1124, 1126 (Ind.Ct.App.1987), *trans. denied.*

The general presumption is not applicable here because a contrary contractual arrangement nullifies the presumption that an agent receiving advances against earned commissions incurs no personal liability to reimburse his principal should the commission prove insufficient. *Skweres v. Diamond Craft Co.,* 512 N.E.2d 217, 220 (Ind.Ct.App.1987). On the other hand, if the contract of employment contains a promise by the agent to repay the sums advanced by the principal, then, the transaction would amount to no more than a loan. The principal has a right to judgment. *Id.; Arbaugh v. Shockney,* 34 Ind.App. 268, 275, 72 N.E. 668, 669 (1904).

In the case before us, the contract clearly indicates that the only compensation Guzik was to receive was commission based upon fees resulting from business obtained due to the sales efforts of Guzik. The contract also contains an express promise to return any excess advances: "If employee, however, is advanced more monies than he earns for the calendar year, then employee *shall reimburse* same to Company within thirty (30) days after employee has been furnished an accounting by the Company of his first calendar year commissions." Record, p. 47–8 (emphasis added). When contract language is clear and unambiguous, it should be given its plain and ordinary meaning. *City of Evansville v. Braun,* 619 N.E.2d 956, 958 (Ind.Ct. App.1993).

The Majority erroneously concludes that because Guzik is no longer an employee, the reimbursement provision does not apply. It is the duty of the court to interpret a contract so as to ascertain the intent of the parties. It must accept an interpretation which harmonizes provisions as opposed to one which causes the provisions to be conflicting. *First Federal Sav. Bank v. Key Markets, Inc.,* 559 N.E.2d 600, 603 (Ind. 1990). The Majority interprets the provision as only requiring an *employee* to return excess advances. Op. at 240. Guzik was an employee when he received the advances. Simply because he chose to resign from employment, should not render the contract provision meaningless. *See Bicknell Minerals, Inc. v. Tilly,* 570 N.E.2d 1307, 1316

(Ind.Ct.App.1991), *trans. denied* (appellate court will make all attempts to construe contract language so as not to render any words, phrases, or terms ineffective or meaningless). Moreover, the plain and ordinary meaning is that meaning given to the contract language by the community and the ordinary reader. *P.C. Management, Inc. v. Page Two, Inc.,* 573 N.E.2d 434, 438 (Ind.Ct.App.1991), *reh. denied.* An ordinary reader would understand the relevant contract provisions to mean that if you receive advances in an amount greater than commission you earned, you are obligated to return the overpayment whether you are a current employee or former employee. To do otherwise, would allow an employee to resign from employment and keep money he was not entitled to hold as earned commissions.

The evidence leads incontrovertibly to a conclusion opposite to that reached by the trial court; its judgment should be reversed.