ARNHOLT ET AL. *v.* THE CITY OF COLUMBUS.

[No. 18,733. Filed November 8, 1957. Rehearing denied December 19, 1957. Transfer denied February 14, 1958.]

*William A. Conner*, of Columbus, *Davis, Hartsock & Wright, Paul Y. Davis*, of counsel, and *Harvey B. Hartsock*, of counsel, all of Indianapolis, for appellants.

*Joseph S. Thompson, Leon D. Cline*, both of Columbus, *Dutton & Kappes* and *C. B. Dutton, Philip S. Kappes* and *Carl D. Overman*, all of counsel, all of Indianapolis, for appellee.

CRUMPACKER, C. J.—In the matter of the annexation of certain unincorporated territory, known as Mead Village, to the city of Columbus, Indiana, the Bartholomew Circuit Court, on February 10, 1955, entered the following finding and judgment:

" . . . the Court now being duly advised in the premises finds that less than 51% of the persons owning property in the territory (Mead Village) sought to be annexed by Ordinance Number 1592, 1954, of the City of Columbus, Indiana, passed by the Common Council thereof on March 1, 1954, have remonstrated and that the adding of such territory to the City of Columbus will be for its interest and will cause no manifest injury to the persons owning property in the territory sought to be annexed. The Court further finds that the prosperity of such City and territory will be materially retarded and the safety of the inhabitants and property thereof endangered without such annexation, and that the annexation should take place.

"It is therefore considered, ordered, adjudged and decreed by the Court that less than 51% of the persons owning property in the territory (Mead Village) sought to be annexed have remonstrated, and that the adding of such territory to the City of Columbus, Indiana, will be for its interest and will cause no manifest injury to the persons owning property in the territory sought to be annexed and that the prosperity of such

City and territory will be materially retarded and the safety of the inhabitants and property thereof endangered without such annexation."

The court took such action pursuant to §48-702, Burns' 1950 Replacement, before the same was amended by Acts of 1955, ch. 269, §3, p. 720. The statute prior to the 1955 amendment reads as follows:

"If the court should be satisfied upon the hearing of (that) less than fifty-one (51) per cent of the persons owning property in the territory sought to be annexed, have remonstrated, and that the adding of such territory to the city will be for its interest and will cause no manifest injury to the persons owning property in the territory sought to be annexed, he shall so find and said annexation shall take place. If the court shall be satisfied that fifty-one (51) per cent or more of the persons owning property in the territory sought to be annexed, have remonstrated, then such annexation shall not take place, unless the court shall find from the evidence that the prosperity of such city and territory will be materially retarded and the safety of the inhabitants and property thereof endangered without such annexation. In case the court shall so find, the annexation shall take place, notwithstanding the remonstrance."

The appellants assail the above finding and judgment on two grounds. First, they say that the undisputed evidence and the law applicable thereto compel the conclusion that more than 51% of the persons owning property in the territory sought to be annexed remonstrated against such annexation; and, second, they contend there is no evidence whatever to support the court's finding "that the prosperity of such city and territory will be materially retarded and the safety of the inhabitants and property thereof endangered without such annexation." It is obvious, having the pertinent statute in mind, that if

the evidence warrants the finding immediately above quoted the number of remonstrators who protested annexation becomes unimportant. We therefore proceed at once to a consideration of the appellants' second proposition and approach the question it poses mindful of the admonition that if there is any evidence of probative value in the record tending to support the finding in question, such evidence must be taken as conclusive of the issue and the judgment must be sustained.

From 1905 to 1955 a remonstrance against the annexation of territory to a city or town was unavailing if the court "shall find from the evidence that the prosperity of such city and territory will be materially retarded and the safety of the inhabitants and property thereof endangered without such annexation." Prior to 1905 annexation proceedings were governed by Acts of 1867, ch. 7, §6, p. 33. When the owners of the territory sought to be annexed objected to annexation the common council of the city seeking the same was required to "present to the board of county commissioners a petition setting forth the reasons for such annexation." Upon receipt of such a petition the commissioners were required "to consider the same and . . . hear the testimony offered for or against such annexation and if, after inspection of the map and of the proceedings had in the case, such board is of the opinion that the prayer of the petition should be granted it shall cause an entry to be made." From 1867 to 1905 a number of Supreme Court decisions have discussed and determined the reasons deemed sufficient to warrant annexation of territory over the objections of the owners. In *Chandler* v. *The City of Kokomo* (1894), 137 Ind. 295, 36 N. E. 847, the court held that the statute of 1867 required only that the petition state the reasons for annexation. It specified no reasons that

should be considered adequate and therefore, said the court, the sufficiency of the reasons was left to the sound discretion of the body passing upon the petition, i.e., the Board of County Commissioners. Reasons held sufficient to warrant an order of annexation over ownership protest are set out in *Catterlin* v. *The City of Frankfort* (1882), 87 Ind. 45; *Edmunds, Treasurer of the City of Terre Haute* v. *Gookins and Others* (1865), 24 Ind. 169; *Glover* v. *The City of Terre Haute* (1891), 129 Ind. 593, 29 N. E. 412; *The Windfall Manufacturing Co.* v. *Emery* (1895), 142 Ind. 456, 41 N. E. 814; *Elston* v. *The Board of Trustees of Crawfordsville* (1863), 20 Ind. 272; *Paul* v. *The Town of Walkerton* (1898), 150 Ind. 565, 50 N. E. 725; *Stilz* v. *The City of Indianapolis* (1877), 55 Ind. 515; *Lake Erie, etc. R. Co.* v. *City of Alexandria* (1899), 153 Ind. 521, 55 N. E. 435. We regard these cases of little help to us in the solution of the present problem as they were all decided under a statute which left the matter of annexation to the sound discretion of the Board of County Commissioners whose action, like that of all administrative boards, was reviewable by the courts only for fraud or illegality.

Since the passage of the Act of 1905, under which these proceedings were instituted, annexation of territory to a city is no longer a discretionary act. It cannot be decreed in the teeth of a majority remonstrance unless the prosperity of the city, the prosperity of the annexed territory and the safety of the inhabitants and property thereof demand it. Obviously the idea that the inhabitants of the territory proposed to be annexed should share the burdens of city government, or that irregular corporate limits should be "squared up," or that taxation should be equalized have little to do with the prosperity of the city or the safety of its inhabitants in person and in

property although such matters were considered adequate reasons for annexation prior to 1905.

We have found no Indiana case specifically defining a situation wherein the annexation of territory to a city is necessary in order that its prosperity may not be materially retarded and the safety of its inhabitants in person and property may be preserved. In construing a statute very similar to ours the Supreme Court of Kentucky has said that materially retarding the prosperity of a town includes use of the town's facilities without paying any part of the cost thereof through taxes. *Pence* v. *City of Frankfort* (1897), 101 Ky. 534, 41 S. W. 1011. The same court has also held that the inability to make improvements and enforce local ordinances in contiguous urban areas because they are not part of the city retards its prosperity. *Collins* v. *Town of Crittenden* (1902), 24 Ky. L. Rep. 899, 70 S. W. 183; *Park* v. *City of Covington* (1920), 187 Ky. 311, 218 S. W. 986.

There is ample evidence in the present record to support both of the above propositions held by the Kentucky court as tending to retard the prosperity of a city. Children of high school age living in the Mead Village area are attending the Columbus High School and a public park in the vicinity, owned and maintained by the city of Columbus and equipped with slides, swings, a swimming pool, shuffle board, tennis, basketball and croquet courts, and a picnic area is freely used by the residents of Mead Village without cost. The Mead Village area is an integral part of the urban territory of Columbus. It represents the actual growth of the city beyond its legal boundary on the north and substantially all persons living therein use the facilities of the city, its schools, its streets, its street lights and its public recreational facilities, all without bearing any portion of the cost thereof and,

of course, all ordinances designed for the protection of the health and safety of the citizens of Columbus are without force and effect in the Mead Village area. As to the safety of the persons in said area the evidence indicates that they have no police protection other than that furnished by the sheriff's office. For fire protection they depend on a volunteer department with two pieces of equipment located in East Columbus several miles away. There is evidence in the record tending to prove that the health of the inhabitants of both the city and Mead Village will be endangered without annexation. Property owners in the Mead Village area depend upon individual wells for their water supply and individual septic tanks for sewage disposal. Several of such owners have had trouble with both wells and septic tanks from which it is inferable that the sufficiency of the water supply is questionable and sewage disposal methods are inadequate. Furthermore, there is testimony to the effect that there is a possibility that the water table that supplies the drinking water in the wells in Mead Village may be contaminated with the discharge and filtration from the many septic tanks and leaching lines in the area. All this creates a definite health hazard to the entire community which, it is conceded, annexation to the city of Columbus and the extension of its sewer system and water mains into the area, will eliminate.

On this state of the record we cannot say that there is no evidence whatever to support the court in its conclusion that annexation should be decreed notwithstanding a majority remonstrance.

Judgment affirmed.

NOTE.—Reported in 145 N. E. 2d 660.