Jeffrey L. CHIDESTER, et al., Appellants
(Plaintiffs Below),

v.

CITY OF HOBART, Indiana, Appellee
(Defendant Below).

No. 45S03–9307–CV–797.

Supreme Court of Indiana.

March 24, 1994.

Richard A. Mayer, Gregory J. Tonner, Merrillville, for appellant.

James Greco, Merrillville, Debra Lynch Dubovich, Highland, for appellee.

SHEPARD, Chief Justice.

Appellant Jeffrey Chidester challenges the sufficiency of the evidence supporting the Lake Superior Court's conclusion that the City of Hobart's fiscal plan for annexing part of Ross Township was adequate. We hold that the plan and evidence are sufficient to sustain the annexation and affirm the trial court.

### I. Facts and Case History

This case is here for the second time. On the first appeal, we noted that "[t]he trial court's findings on much of the remonstrance were unchallenged on appeal and they therefore stand." *City of Hobart v. Chidester* (1992), Ind., 596 N.E.2d 1374, 1378–79. We held, however, that the court should have considered both the fiscal plan and the evidence presented at trial in determining whether Hobart had satisfied the statutory requirements of Ind.Code Ann. § 36–4–3–13(d) (West 1983). Accordingly, we remanded the case to the trial court to determine the adequacy of Hobart's plan "in light of all the evidence." *Id.*

On remand, Judge James Richards examined all the evidence and upheld the annexation. Remonstrator Chidester appealed, and Hobart petitioned for an expedited appeal to this Court under Indiana Appellate Rule 4(A)(9). We granted Hobart's request.

### II. Standard of Review

■ The trial court entered findings of fact and conclusions of law sua sponte. Trial courts are not required to enter special findings in annexation cases, *Abell v. City of Seymour* (1971), 150 Ind.App. 163, 275 N.E.2d 547, and neither party in this case requested such findings pursuant to Indiana Trial Rule 52. Where special findings are volunteered by the trial court, we apply the standard of review set out in Trial Rule 52. *See Sho–Pro of Indiana, Inc. v. Brown* (1992), Ind.App., 585 N.E.2d 1357.

Under that rule, issues covered by the special findings will not be disturbed unless clearly erroneous. T.R. 52(A). We determine whether the evidence supports the findings and the findings support the judgment, and we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *See Indianapolis Convention & Visitors Ass'n v. Indianapolis Newspapers, Inc.* (1991), Ind., ·577 N.E.2d 208. For remonstrators to prevail on appeal from an adverse trial court judgment, "there must be a complete failure of proof with regard to the determinant at issue." *Abell*, 150 Ind.App. at 166, 275 N.E.2d at 550; *see also Baker v. City of South Bend* (1971), 148 Ind.App. 596, 268 N.E.2d 623. We do not reweigh the evidence; rather, we consider the evidence most favorable to the judgment of the trial court with all reasonable inferences therefrom. *See, e.g., Smith v. Town of Culver* (1968), 249 Ind. 665, 234 N.E.2d 494 (affirming trial court's decision to uphold annexation); *City of Aurora v. Bryant* (1960), 240 Ind. 492, 165 N.E.2d 141 (affirming trial court's decision to invalidate annexation).

The power of annexation is fundamentally legislative, and the judicial role in annexation cases is limited to that prescribed by statute.[1] *King v. City of Bloomington* (1959), 239 Ind. 548, 159 N.E.2d 563. Under the current statute, if the remonstrators are able to garner the requisite level of support,[2] they may appeal the annexation to the courts. At the remonstrance hearing, the burden is on the municipality to demonstrate its compliance with the statute. The court's review is limited to ensuring that the municipality has not exceeded its authority and that the statutory conditions for annexation have been satisfied. *Cf. City of Indianapolis v. Wynn* (1959), 239 Ind. 567, 157 N.E.2d 828.

## III. Compliance with the Annexation Statute

The present statute requires that a city's annexation plan show that the city will promptly provide the annexed territory with municipal services equivalent to those it already provides in similar areas of the existing city. Ind.Code Ann. § 36–4–3–13 (West Supp.1993). The questions presented on this appeal are whether the most favorable evidence supports Judge Richards' findings that Hobart will provide equivalent services to similar neighborhoods and whether those findings support the judgment for Hobart. The evidence considered by Judge Richards consisted of Hobart's fiscal plan, thirty-two pages detailing the services to be provided to annexed property owners and the cost of each, and the evidence presented by the parties.[3] All tolled, this amounted to more than ·3000 pages of text and exhibits. Having reviewed the evidence, findings, and conclusions, we affirm the trial court's judgment.

### A. Comparisons between Hobart and the Annexed Area

Judge Richards held that the fiscal plan and the evidence established that Hobart had designed services for the annexed area equivalent to those in similar neighborhoods in the existing city. Supp.R. at 83 (conclusion 2). The court found:

The evidence shows that April Wooden, a charter member of the American Institute of Certified Planners and a member of Hughes Associates, Indiana certified planners, and a lawyer specializing in land use law, was hired by Hobart to prepare the fiscal plan. In doing so, Ms. Wooden personally made comparisons between areas of Hobart and the [annexed area], includ-

1. For a discussion of the history of the annexation power in Indiana, see *Paul v. Town of Walkerton* (1898), 150 Ind. 565, 50 N.E. 725; *Arnholt v. City of Columbus* (1957), 128 Ind.App. 253, 145 N.E.2d 660.

2. The annexation statute provides:
   (a) Whenever territory is annexed by a municipality under this chapter, the annexation may be appealed by filing with the circuit or superior court of a county in which the annexed

territory is located a written remonstrance signed by:
(1) a majority of the owners of land in the annexed territory; or
(2) the owners of more than seventy-five percent (75%) in assessed valuation of the land in the annexed territory.
Ind.Code Ann. § 36–4–3–11 (West Supp.1993).

3. On remand, neither party requested to produce additional evidence, and none was adduced.

ing subdivisions, streets, sanitary, storm water sewers, street lights, refuse collection, police, and fire and ambulance services. She was assisted in this comparison by: James Hughes, head of Hughes Associates, land planners in Mishawaka, Indiana, also a consultant for Hobart, in preparing the fiscal plan; Mr. Leets, referred to in Finding No. 18; Fire Chief Tom Adams of Fort Wayne, a city actively involved in annexations. That in addition, Ms. Wooden consulted with other department heads within the City of Hobart as to all the services to be provided to the [annexed area].

Supp.R. at 82–83 (finding 24); *see also id.* at 81 (finding 18).

This finding is amply supported by the record. April Wooden testified that comparisons had been made of like areas and that they "considered the three things that are mentioned in the Statute, the topography, the land use and population." R. at 1121–22; *see also* R. at 1124–25 (testimony of April Wooden on statutory requirements generally). She testified further:

I spent quite a bit of time driving around not only in Hobart but in the Unincorporated Area to try to familiarize myself with the kinds of existing development and the potential for development and what was going on in both areas. I met with a lot of community leaders. I gathered data from, again, from the Regional Planning Commission, from the Assessor's Office, from the County. I met with people in the County Plan[ning] Department. Yes, there was a lot of background work and a lot of field work done.

R. at 1117.

Judge Richards' finding is also supported by the testimony of William Leets. Leets acted as the Code Enforcement Officer for City of Hobart and served on the Board of Works and Public Safety; he formerly served on the Board of Zoning Appeals and on the Hobart City Council. R. at 2568–71. Leets' extensive testimony focused on maps and exhibits demonstrating the comparisons made by Hobart. R. at 2568–2749.

4. Similar evidence, findings, and conclusions address other key services, like storm sewers, street

The evidence clearly supports Judge Richards' finding that Hobart made the requisite comparisons, and the finding supports the conclusion that Hobart satisfied this element of the annexation statute.

## B. Provision of Equivalent Services

Judge Richards concluded that the fiscal plan and the evidence established that Hobart will provide equivalent capital and non-capital services to like areas of the annexed territory. Supp.R. at 83 (conclusion 3). For the purposes of this opinion an examination of a few select but important services will suffice to demonstrate the validity of the trial court's judgment. We examine briefly the evidence that Hobart will supply equivalent police, fire, ambulance, and sanitary sewer services to like areas of the annexed territory.[4]

**1. Non-capital Services: Police, Fire, and Ambulance Services.** The court found that Hobart will provide equivalent police, fire, and ambulance services to like areas of the annexed territory:

The evidence and the fiscal plan establish[] that police protection would be extended to the [annexed area] similar to that provided in Hobart within one year; and $339,748.00 was budgeted for that purpose, as well as $55,000.00 for squad cars, and $350,000.00 for a new fire-police substation in the [annexed area].

Supp.R. at 80 (finding 16). The court also stated:

The evidence and the fiscal plan show that Hobart will be able to provide fire and ambulance service to the [annexed area] equivalent to that of Hobart within one year; and money has been budgeted for that purpose.

*Id.* (finding 17).

The evidence supports these findings. Wooden testified that she met with Hobart's Police Chief to discuss the services provided by the Lake County Sheriff's Department. She explained that she investigated the current number of police calls in the annexed

lights, non-capital street improvements and maintenance, recreation, and garbage collection.

area and how Hobart could respond to those calls. R. at 1120–21; *see also* R. at 1209–10 (testimony of April Wooden on response times for police and fire services).

Thomas Adams, Fire Chief of the City of Fort Wayne and expert in preparing response time comparisons, testified that Hobart will be able to provide equivalent fire and ambulance services to the annexed area. Adams based his conclusion on the locations of Hobart's fire stations, its fire fighting staff and equipment, and the response times logged by Mr. Leets.[5] R. at 2830–41. He further testified that services will be equivalent as between the Deep Estates area in Hobart and the Green Acres area in the annexed territory, neither of which has fire hydrants. R. at 2841–42; *see also* R. at 2842–67 (testimony of Thomas Adams on fire and ambulance services); *id.* at 1209–10, 1120–21 (testimony of April Wooden on response times for police and fire services); *id.* at 2623–41 (testimony of William Leets on response times for fire and ambulance services).

This evidence sufficiently supports the court's findings, and the findings support Judge Richards' conclusion that Hobart will supply equivalent non-capital services to like areas of the annexed territory.

**■ 2. Capital Services: Sanitary Sewers.** The court found that Hobart will employ the same policy with regards to sanitary sewers in the annexed territory that it uses in Hobart:

> The evidence indicates that with respect to sanitary sewers, many areas in both the City of Hobart ... and the territory to be annexed ... are on a septic system or are served by private sanitary facilities. Approval by State agencies is required before any sanitary sewers can be constructed. The same policies adopted for Hobart with respect to sanitary facilities would apply to the [annexed area].

Supp.R. at 79 (finding 12).

This finding is supported by the evidence. Wooden testified that the annexed area will receive the same sanitary systems currently employed in Hobart. She explained:

> The sewer question in Hobart, there are areas now that are large lots that are still on septic systems. The residential development in the proposed annexation area would be handled the same way. If it was a large lot, relatively low density residential development, we would expect that it either be on septic or that the developer provide the sewer. And that's the same policy that's been adopted in the City.

R. at 1123–24. The City also introduced a sewer atlas into evidence, supported by the testimony of William Leets. R. at 2592–97. The atlas showed the areas in Hobart and the annexed area with comparable sewer systems, those without sewers, and those serviced by private facilities. *See also* R. at 2591–2622 (testimony of William Leets on sanitary sewer services).

The record supports the court's findings, and the findings support the court's conclusion that Hobart will provide equivalent sanitary sewer services to like areas of the annexed territory.

### IV. *Claims Waived*

Counsel for the remonstrators now wish to raise various constitutional objections to the annexation. First, they claim that the annexation statute deprives them of their right to a jury trial under the Indiana Constitution. Ind. Const. art I, § 20. Second, they submit that because the statutory procedure does not permit the annexed territory to vote on the annexation, they have been deprived of due process and equal protection of the law under the Fourteenth Amendment to the Federal Constitution. Finally, they allege that the annexation constitutes a taking without just compensation under the Fifth and Fourteenth Amendments to the Federal Constitution because Hobart merely wants to increase its tax revenues.

**■** Counsel for the remonstrators, however, have waived each of these claims. Counsel may not raise these issues for the

---

**5.** Mr. Leets testified that he made test runs to establish the likely response times for the fire and ambulance services. R. at 2623–41.

first time on appeal, *Wynn*, 239 Ind. 567, 157 N.E.2d 828, much less for the first time on a subsequent appeal after a limited remand. Counsel did not demand a jury trial, for example, pursuant to Indiana Trial Rule 38. Thus, they may not now complain that the statute provides for a bench trial. *Hayworth v. Bromwell* (1959), 239 Ind. 430, 158 N.E.2d 285.

 Counsel also waived the due process, equal protection, and uncompensated taking claims. Counsel made general references in their original complaint to alleged violations of "constitutional guarantees" but did not specify which rights were at issue. Counsel did not raise these issues in their supplemental complaints, trial brief, opening statement, or first Proposed Findings of Fact and Conclusions of Law. Neither did counsel include these issues in their briefs on appeal, *City of Hobart v. Chidester* (1991), Ind.App., 582 N.E.2d 457, or on transfer. Even up to the last hour, counsel did not raise these constitutional issues in their second Proposed Findings of Fact and Conclusions of Law. Supp.R. at 14–40. In short, the subject was "rather mentioned than debated." *Stilz v. City of Indianapolis* (1877), 55 Ind. 515, 524.

 We note that this Court has previously decided these constitutional issues against the remonstrators. It is well established that a municipality may annex territory without the consent of the inhabitants of that territory. *See, e.g., Forks v. City of Warsaw* (1971), 257 Ind. 237, 273 N.E.2d 856 (failure to provide referendum did not violate Equal Protection Clause of Fourteenth Amendment), *cert. denied*, 409 U.S. 841, 93 S.Ct. 39, 34 L.Ed.2d 80 (1972); *Woerner v. City of Indianapolis* (1961), 242 Ind. 253, 177 N.E.2d 34 (annexation statute did not violate Fourteenth Amendment or right of self-gov-

ernment under Indiana Constitution), *cert. denied*, 368 U.S. 989, 82 S.Ct. 605, 7 L.Ed.2d 526 (1972); *Taggart v. Claypool* (1896), 145 Ind. 590, 44 N.E. 18 (limiting right of appeal to freeholders did not violate Due Process Clause of Fourteenth Amendment or Privileges or Immunities Clause of Indiana Constitution).

 Counsel's takings argument has also been resolved adverse to their claim. *See Taggart*, 145 Ind. 590, 44 N.E. 18; *see also Stilz*, 55 Ind. 515. "There is no constitutional guarantee for the continued existence of a governmental subdivision of the state," *Woerner*, 242 Ind. 253, 267, 177 N.E.2d 34, 40, and "annexation of territory to a city is not a taking of the property, nor does it deprive any person of his property," *Taggart*, 145 Ind. at 596, 44 N.E. at 20. As we said more than a century ago, "no property is taken from the owner, by annexation, no private right of the owner is affected; the act simply changes the property and its owner, in their civil relation to certain public authority. This power the State has the right to exercise, directly or indirectly, within constitutional limits, at any time." *Stilz*, 55 Ind. at 523.[6]

Finding the evidence sufficient, we affirm the trial court.

DeBRULER, GIVAN, DICKSON and SULLIVAN, JJ., concur.

___

6. Under a former statute, we held that municipalities may not annex property solely for the purpose of increasing tax revenues. *Bryant*, 240 Ind. at 505–06, 165 N.E.2d at 148. While the Court in *Bryant* was interpreting language no longer in the statute, the current statute's demand that the city need and can use the territory carries with it the requirement that cities demonstrate more than an interest in increased tax revenues. Ind.Code Ann. § 36–4–3–13(c)(2) (West 1983).

In this case, the record amply supports Judge Richards' earlier findings and conclusion, Supp.R. at 87–88, that Hobart needed and could use the annexed territory for transportation linkages with other developing areas, to control adjacent development on its borders, and to prevent conflicting land uses. *See, e.g.*, R. at 1039, 1044, 1087–88 (testimony of William Staehle, associate professor of public planning at Indiana University).