**In the Matter of Annexation Proposed by ANNEXATION ORDINANCE NUMBER X–07–91 Being an Ordinance to Annex Certain Territory to the City of Fort Wayne and to Include Same in Councilmanic District Number 2 (BLACKHAWK ANNEXATION).**

No. 02A04–9406–CV–216.

Court of Appeals of Indiana, Fourth District.

Jan. 12, 1995.

Rehearing Denied March 29, 1995.

John M. Clifton, Jr., Barrett & McNagny, Fort Wayne, for appellant.

J. Timothy McCaulay, City of Ft. Wayne, Fort Wayne, for appellee.

## OPINION

CHEZEM, Judge.

### Case Summary

Defendant–Appellant, ("Remonstrators"), appeal the trial court's denial of their remonstrance to Plaintiff–Appellee's, City of Fort Wayne's ("City's"), annexation proposal. Having reviewed the evidence, findings, and conclusions of law, we affirm.

### Issue

Remonstrators present one issue for our review, which we restate as follows: whether the specific findings of fact and conclusions of law entered by the trial court were clearly erroneous.

### Facts and Procedural History

The City of Fort Wayne Common Council adopted Annexation Ordinance X–07–91 and fiscal plan R–78–91 on December 26, 1991. The Blackhawk territory sought to be annexed by X–07–91 was part of the territory proposed to be annexed by a 1979 City of Fort Wayne Annexation Ordinance, X–04–79. A remonstrance was filed against X–04–79 on September 13, 1979. On June 27, 1989, the City of Fort Wayne repealed X–04–79. Following the repeal of X–04–79, the City filed a motion to dismiss the remonstrance against the ordinance on the grounds the remonstrance was moot. The City's motion to dismiss was granted on February 2, 1993. Remonstrators filed a petition challenging the 1991 annexation proposal. They appeal from the denial of that petition.

### Discussion and Decision

#### I. Standard of Review

The trial court entered specific findings of fact and conclusions of law. The special findings will not be disturbed unless clearly erroneous. T.R. 52(A). We determine whether the evidence supports the findings and whether the findings support the judgment, and we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Chidester v. City of Hobart* (1994), Ind., 631 N.E.2d 908; *Indianapolis Convention & Visitors Ass'n v. Indianapolis Newspapers, Inc.* (1991), Ind., 577 N.E.2d 208. For a party to prevail on appeal from an adverse trial court judgment in a remonstrance action, "there must be a complete failure of proof with regard to the determinant at issue." *Abell v. City of Seymour* (1971), 150 Ind.App. 163, 166, 275 N.E.2d 547, 550; *see also Baker v. City of South Bend* (1971), 148 Ind.App. 596, 268 N.E.2d 623.

We do not reweigh the evidence; rather, we consider the evidence most favorable to

the judgment of the trial court with all reasonable inferences therefrom. *Smith v. Town of Culver* (1968), 249 Ind. 665, 234 N.E.2d 494 (affirming trial court's decision to uphold annexation); *City of Aurora v. Bryant* (1960), 240 Ind. 492, 165 N.E.2d 141 (affirming trial court's decision to invalidate annexation).

■ The power of annexation is fundamentally legislative, and the judicial role in annexation cases is limited to that prescribed by statute. *King v. City of Bloomington* (1959), 239 Ind. 548, 159 N.E.2d 563. Under the current statute, if the remonstrators are able to garner the requisite level of support, they may appeal the annexation to the courts. At the remonstrance hearing, the burden is on the municipality to demonstrate its compliance with the statute. This court's review is limited to ensuring that the municipality has not exceeded its authority and that the statutory conditions for annexation have been satisfied. *Cf. City of Indianapolis v. Wynn* (1959) 239 Ind. 567, 157 N.E.2d 828.

II. Whether Specific Findings of Fact and Conclusions of Law Were Clearly Erroneous

 A. Annexation Ordinance X–07–91 in Relation to Annexation Ordinance X–04–79.

■ Remonstrators argue that the City did not have the power to enact Annexation Ordinance X–07–91 for a period of two years after February 2, 1993, the date upon which the Allen Superior Court issued a decision in respect to Annexation Ordinance X–04–79. Essentially, Remonstrators argue that the decision by the Allen Superior Court was adverse to Annexation Ordinance X–04–79 and, as such, the two-year statutory moratorium should be applied to Annexation Ordinance X–07–91.[1]

The current moratorium statute, I.C. 36–4–3–15(b) provides:

> If a judgment under section 12 or 15.5 of this chapter is adverse to annexation, the municipality may not make any further attempts to annex the territory during the two (2) years following the judgment, unless the annexation is petitioned for under section 5 [I.C. 36–4–3–5].

The annexation moratorium statute no longer references "any decision adverse to annexation." *See* I.C. 18–5–10–26, repealed effective September 1, 1981 by Acts 1980, P.L. 212, Sec. 10(c). The application of the annexation moratorium statute is limited to judgments adverse to annexation entered under either I.C. 36–4–3–12 or I.C. 36–4–3–15.1. I.C. 36–4–3–15.1 refers to a complaint made by an owner of land within one-half (½) mile which "must state that the reason the annexation should not take place is that the territo-

---

1. The trial court entered the following specific findings of fact and conclusions of law relating to this issue:

*FINDINGS OF FACT*

 1. The Common Council of the City of Fort Wayne enacted Annexation Ordinance X–04–79 on June 29, 1979 which was approved by the then Mayor of the City on June 5, 1979. A Remonstrance was filed by the owners of real estate located within the area covered by Annexation Ordinance X–04–79 in Allen Superior Court under Cause No. S–79–2259.

 2. The Common Council of the City of Fort Wayne repealed Annexation Ordinance X–04–79 on July 11, 1989 and the City of Fort Wayne filed a Motion to Dismiss in Cause No. S–79–2259 on July 18, 1989.

 3. The Common Council of the City of Fort Wayne enacted Annexation Ordinance X–07–91, on December 22, 1991 (Plaintiff's Exhibit PC # 1). Remonstrators filed their Remonstrance herein on February 25, 1992 and the Court previously determined there were sufficient signatures of owners of real estate locat-

ed within the area purportedly covered by Annexation Ordinance X–07–91 to establish jurisdiction.

 4. The real estate located within Annexation Ordinance X–07–91, was part of and wholly located within the area described in Annexation Ordinance X–04–79.

 5. After the City of Fort Wayne moved to dismiss the Remonstrance proceeding regarding Annexation Ordinance X–04–79 on July 18, 1989, the action continued to pend until January 23, 1992 when the Remonstrators filed a Multiple Motion. A hearing was thereafter held on November 10, 1992 before the Honorable Robert Hines, a Judge of the Allen Superior Court, who dismissed the Remonstrance proceeding, Cause No. S–79–2259, on February 2, 1993.

*CONCLUSIONS OF LAW*

 14. The annexation in this case is not barred by the February 2, 1993 decision in Allen Superior Court Cause No. S–79–2259 as said decision was not a judgment against annexation.

ry sought to be annexed is not contiguous to the annexing municipality" and, thus, has no application to the present proceedings. I.C. 36–4–3–12 involves a hearing on whether the annexation should take place following the filing of a sufficient remonstrance.

 Remonstrators argue that the current moratorium statute is inapplicable because the 1979 annexation effort predates the adoption of I.C. 36–4–3–15(b) and that the prior statute mandated a two-year moratorium against further annexations when there is a "decision" adverse to annexation. First, the order issued by the trial court granted the City's motion to dismiss the annexation proceeding; thus, the City received a favorable and not an adverse outcome. An adverse judgment is one entered against a party defending on a given question. *Vanderburgh County v. Rittenhouse* (1991), Ind.App., 575 N.E.2d 663, *trans. denied.* The City was defending its motion to dismiss and judgment was rendered in their favor on the motion.

Nonetheless, the current moratorium statute is a mere recodification of the earlier moratorium statute, I.C. 18–5–10–26. As noted in *Town of Porter v. Bethlehem Steel Corp.* (1983), Ind.App., 451 N.E.2d 69, 69 n. 1, "[t]he current provision is recodified without substantial change." The change from the term "decision" to the term "judgment" appears in recodification. *See* Public Law 212 of the Acts of 1980, Section 3. Moreover, in the recodification, the General Assembly expressly stated:

> This act is intended to be a codification and restatement of applicable or corresponding provisions of the laws repealed by this act. If this act repeals and replaces a law in the same form or in a restated form, the substantive operation and effect of that law continues uninterrupted.

*Id.* at Section 11(a).

Section 8 of Public Law 308 provided that the new moratorium statute did not "affect any annexation proceedings begun before May 1, 1981." Nevertheless, Section 9 of Public Law 308 provided that Section 8 of Public Law 308 expired May 1, 1985. Thus, the limitation on the application of the current moratorium statute to annexations begun before May 1, 1981 had expired by the date of the February 3, 1993 court action on which the Remonstrators rely.

Remonstrators, relying on *Town of Porter v. Bethlehem Steel Corp.*, 451 N.E.2d 69, contend that it is not necessary that an annexation fail on the merits to invoke the two-year moratorium. In *Porter*, the annexation failed because the Town did not meet a basic requirement of the annexation statute. The proposed annexation in *Porter* was considered on its merits when a determination was made as to whether the statute was followed, unlike the 1979 annexation proposal, which was never considered on its merits in relation to the relevant statute before it was dismissed by the trial court. Accordingly, the evidence supports the trial court's findings on this issue and the findings support the trial court's judgment.

### B. Harassment

 It is also the position of Remonstrators that Annexation Ordinance X–07–91 constituted harassment, bad faith or vexatious conduct.[2] The burden is on the remonstrators to prove any such harassment. *Jones v. Town of Sunman* (1962), 243 Ind. 70, 181 N.E.2d 777. The evidence must indicate that the City's sole purpose was to frustrate the remonstrance efforts. *Id.* The evidence does not support this Remonstrator's claim of harassment or vexatious conduct. Moreover, the trial court's specific finding of facts indicate otherwise. The evidence supports the trial court's findings on this issue and the findings support the trial court's judgment.

### C. Compliance With the Annexation Statute and Case Law

 Remonstrators contend that Annexation Ordinance X–07–91 and its fiscal plan

---

2. The trial court entered the following conclusion of law relating to this issue:

26. Annexation Ordinance X–07–91 is not substantially the same as Ordinance X–04–79 and was adopted by the City of Fort Wayne in a manner that was not harassing, vexatious or in bad faith. Nor was the sole purpose of the City of Fort Wayne, in undertaking to annex the territory in question to raise taxes.

do not meet the requirements of I.C. 36–4–3–13 and our supreme court's holding in *City of Hobart v. Chidester* (1992), Ind., 596 N.E.2d 1374, *appeal after remand*, 631 N.E.2d 908. The specific finding of fact challenged by the Remonstrators is:

> 27. City of Fort Wayne planners made comparisons of the services provided to the Georgetown/Lake Forest area and the services to be provided the Blackhawk Annexation Area prior to the adoption of Annexation Ordinance X–07–91.

3. The trial court entered the following specific findings of fact and conclusions of law in relation to this issue:

*SPECIFIC FINDINGS OF FACT*

> 10. By resolution adopted by the Common Council of Fort Wayne on August 28, 1979, and codified at Section 28.02 of the Code of the City of Fort Wayne, the City of Fort Wayne had established, prior to the adoption of Annexation Ordinance X–07–91, a definite policy committing the City to provide territories to be annexed the following:
> (a) Police and fire protection, emergency medical service, solid waste collection, traffic engineering, street and road maintenance and other non-capital services within one year from the effect date of annexation in a matter which is equivalent in standard and scope to those non-capital services normally provided to areas within the City which have a similar topography, patterns of land utilization and population density; and
> (b) Services of a capital improvement nature, such as street construction, street lighting, sewer facilities, water facilities and storm water drainage facilities, within three (3) years of the annexation, in the same manner as those services are provided to areas within the City which have similar topography, patterns of land utilization and population density, and in a manner consistent with federal, state and local laws, procedures and planning criteria.
> 11. On December 26, 1991, City of Fort Wayne Common Council adopted Resolution R–78–91 (Plaintiff's Exhibit PC # 2) which sets forth the policy of the City of Fort Wayne in regards to the Blackhawk annexation area, the territory sought to be annexed by City of Fort Wayne Annexation Ordinance No. X–07–91, which resolution incorporates and approves the written fiscal plan for said territory titled "Blackhawk Annexation Fiscal Plan," dated November, 1991 (Plaintiff's Exhibit PC # 3), as well as committing the City to provide non-capital and capital services to the territory consistent with the City policy set forth in City's Code.
> 13. The Blackhawk Annexation Fiscal plan, as incorporated into Resolution R–78–91, shows:

Remonstrators argue the trial court did not consider evidence presented at the trial, as required by *City of Hobart*, 596 N.E.2d 1374. The annexation statute requires only "that a city's annexation plan show that the city will promptly provide the annexed territory with municipal services equivalent to those it already provides in similar areas of the existing city." *Chidester v. City of Hobart*, 631 N.E.2d at 910. Thus, because the trial court's findings that the services are equivalent[3] are unchallenged, the only question is

> A) Planned services to be furnished;
> B) Cost estimates of planned services to be furnished;
> C) the plan for the organization and extension of services; and
> D) The plan for hiring employees of other governmental entities whose jobs will be eliminated by the proposed annexation.
> 14. The City of Fort Wayne plans to provide police protection, upon annexation, by expanding the jurisdictional boundaries of Police District 3, which service is standard for the City and equivalent in scope to the police protection service presently provided to the Georgetown/Lake Forest area, an area within the City which has similar topography, patterns of land use and population density as the Blackhawk Annexation Area.
> 15. The City of Fort Wayne plans to provide fire services, upon annexation, which services will include fire protection and suppression, emergency rescue, fire prevention and fire inspection with the territory to be served by Fire Station 14 located with an estimated response time of four to six minutes which services are standard for the city and equivalent in scope to fire protection services presently provided to the Georgetown/Lake Forest area, an area within the City which has similar topography, patterns of land use and population density. The two areas are to be served by the same fire station which station is closer to the Blackhawk annexation than are to the Georgetown/Lake Forest Area.
> 16. The City of Fort Wayne plans to provide full advanced life support ambulance service, upon annexation, through the City's agreement with the Three Rivers Ambulance Authority as well as extra emergency assistance through the fire department's emergency medical technician stationed at each fire station. Said proposed level of services is standard for the City and equivalent in scope to emergency medical services presently provided to the Georgetown/Lake Forest area, and area within the City which has similar topography, patterns of land use and population density.
> 17. The City of Fort Wayne plans to provide, upon annexation, weekly residential garbage collection which level of service is stan-

**655**

whether the special findings are sufficient to support the judgment.

Further, the evidence indicates throughout the record that the trial court did consider evidence presented at trial on this issue.

dard for the City and equivalent in scope to the garbage collection service presently provided to the Georgetown/Lake.Forest area, an area within the City which has similar topography, patterns of land use and population density.

18. The City of Fort Wayne plans to provide, upon annexation, engineering services for traffic control which would include investigation of the need for, and the installation and maintenance of, traffic control devices which level of services is standard for the City and equivalent in scope to the traffic control engineering services presently provided to the Georgetown/Lake Forest area, an area within the City which has similar topography, patterns of land use and population density. Upon annexation, the City will also install twenty-six (26) new street signs.

19. The City of Fort Wayne plans to provide, upon annexation, general street maintenance which will include ice and snow removal and general surface maintenance by incorporating the Blackhawk territory's .86 miles of arterial street and 5.69 miles of residential streets into the City's street maintenance program, which level of service is standard for the City and equivalent in scope to the street maintenance services presently provided to the Georgetown/Lake Forest area, and area within the City which has similar topography, patterns of land use and population density.

20. The City of Fort Wayne's water utility and sanitary sewer utility presently serves the territory sought to be annexed.

21. The City of Fort Wayne plans, within three years of annexation, to place street lights at the forty-two (42) intersections in the Blackhawk territory which did not presently have them and to permit residents to petition for additional lighting. The placement of intersection street lights is a capital service which must be provided in a manner consistent with state law and I.C. 36-9-9-8 governs the placement of intersection lighting facilities. I.C. 36-9-9-12 provides the procedures by which citizens may petition for additional lighting services. The procedures by which citizens may petition for additional lighting services. The procedures for intersectional and additional street lighting set forth in the fiscal plan are consistent with state law and equivalent in standard and scope to those procedures presently available in the Georgetown/Lake Forest area, an area of the City with similar topography, patterns of land use and population density.

22. The City of Fort Wayne, upon annexation, will maintain the existing storm sewers located within the territory which service is standard for the City and equivalent in scope to the storm sewer maintenance service presently available in the Georgetown/Lake Forest area, and area of the City with similar topography, patterns of land use and population density.

24. The City of Fort Wayne has sufficiently identified the services promised and has developed a written systematic program for the provision of the promised services to the territory sought to be annexed which provides a sufficient benchmark against which to measure the services actually provided within the statutory periods outlined in I.C. 36-4-3-13(d).

*CONCLUSIONS OF LAW*

3. The City of Fort Wayne's publication of Annexation Ordinance No. X-07-91 complied with both I.C. 36-4-3-7 and I.C. 5-3-1.

4. City of Fort Wayne Annexation Ordinance X-07-91 satisfied the requirements of I.C. 36-4-3-13(b) and I.C. 36-4-3-13(d), and all other applicable laws, statutes, requirements and rules of the State of Indiana.

5. The City of Fort Wayne has committed itself to providing a level of planned services to the territory sought to be annexed by Annexation Ordinance X-07-91 that does not discriminate against the residents of said territory in favor of the residents within the existing boundaries of the City of Fort Wayne.

6. The City's written fiscal plan for providing services to the territory sought to be annexed by City of Fort Wayne Annexation Ordinance No. X-077-91, as incorporated by reference in Resolution R-78-91, satisfies the requirements of I.C. 36-4-3-13 and is a sufficient benchmark by which to measure the services actually to be provided the territory as against those services promised.

7. Resolution R-78-91, by incorporating by reference the Blackhawk Fiscal Plan in the manner set forth in I.C. 36-1-5-4, satisfies the statutory requirements set forth in I.C. 36-4-3-13(d).

8. There is no legal requirement that an annexation fiscal plan contain specific comparisons between the services promised the territory to be annexed and any services provided a comparable area within the annexing municipality.

9. The City planning department did make topography, land use, and population density comparisons prior to the time of City Council determined what services to be provided the Blackhawk Annexation Area.

12. The City of Fort Wayne has satisfied the requirements of I.C. 36-4-3-13(b) and therefore is not required to meet the requirements of I.C. 36-4-3-13(c).

13. The City's annexation of the Blackhawk Annexation Area is neither arbitrary nor capricious given the fact the area already receives City water services and City sanitary sewer services.

Testimony was provided by the planner who drafted the Fiscal Plan and others. In essence, Remonstrators ask us to reweigh the evidence presented at the hearing. We will only determine whether the evidence supports the findings and whether the findings support the judgment. *Chidester*, 631 N.E.2d at 910. Clearly on this issue, such is the case.

D. Whether the City's Sole Purpose Was To Raise Taxes.

 Remonstrators posit that the City's sole purpose in annexation is to raise tax revenues. The trial court entered the following conclusion of law on this issue:

11. The purpose of the City's annexation of the Blackhawk Annexation territory is not to solely raise taxes.

A city may not annex property solely for tax revenues to be obtained. *Chidester*, 631 N.E.2d at 913. The test is whether the "city need[s] and can use the territory" and that the city "demonstrate more than an interest in increased tax revenues." *Id.* An annexing municipality is only required to satisfy the requirements of I.C. 36-4-3-13(b) *or* I.C. 36-4-3-13(c). I.C. 36-4-3-13(a)(1). Moreover, I.C. 36-4-3-13(b) does not contain the same demand that the municipality needs and can use the territory to be annexed. It is undisputed that the City satisfied the requirements of I.C. 36-4-3-13(b). Therefore, the City's purpose in annexing the Blackhawk territory is not germane because the requirements of I.C. 36-4-3-13(b) can be met without considering whether the annexing municipality needs and can use the territory to be annexed.

Nonetheless, the evidence indicates that the City's fiscal plan recites that "[t]he annexation of the Blackhawk area is part of a larger, comprehensive annexation program" developed in the years 1975-76. One purpose of this comprehensive annexation plan was to "manage urban growth."

Remonstrators once again urge us to reweigh the evidence. We will not reweigh the evidence when specific findings are made pursuant to Indiana Rule of Trial Procedure 52. Rather, we consider "the evidence most favorable to the judgment of the trial court

with all reasonable inferences therefrom." *Chidester*, 631 N.E.2d at 910.

Accordingly, we decline the invitation to reweigh the evidence. The evidence supports the findings of the trial court and the findings support the judgment on this issue.

Affirmed.

RILEY and ROBERTSON, JJ. concurring.