**TOWN OF SELLERSBURG,**
**Appellant–Defendant,**

v.

In re the Matter of the PROPOSED AN-
NEXATION OF CERTAIN PROPERTY
LOCATED IN CLARK COUNTY,
Indiana, Appellees–Plaintiffs.

Nos. 10A01–9511–CV–363 to
10A01–9511–CV–365.

Court of Appeals of Indiana.

March 19, 1997.

William P. McCall, III, Jeffersonville, for
Appellant–Defendant.

Larry O. Wilder, Jeffersonville, for Appellees–Plaintiffs.

## OPINION

BAKER, Judge.

In this consolidated appeal, we address the sufficiency of and specificity required in a municipality's annexation plan under Indiana statutory law.

### FACTS [1]

On June 28, 1993, the Town Council of Sellersburg adopted ordinances Nos. 93–571, 93–572 and 93–573, annexing three parcels of property known as Area I, Area K, and Area M. At the same time, Sellersburg also adopted fiscal plans for each of the areas.

Shortly thereafter, residents of the annexed territories (Remonstrators) filed petitions in opposition to each annexation, claiming that Sellersburg failed to meet the statutory requirements for annexation under IND. CODE § 36–4–3–13(d). Specifically, the Remonstrators alleged that Sellersburg failed to demonstrate that it could provide the same type and nature of services to the annexed areas as provided to similar areas within the town. Additionally, the Remonstrators argued that the fiscal plan did not adequately address the provision of police protection and storm drainage services to the annexed territories.

All three remonstrance petitions were consolidated for purposes of discovery and hearing, and the trial court heard evidence on January 24 and 25, 1995. Following the hearing, the trial court entered findings of fact and conclusions of law, concluding that Sellersburg's fiscal plan was not specific enough to meet the statutory requirements for annexation and Sellersburg had failed to demonstrate that the annexed areas were necessary for the town's development. As a result, the trial court granted the remonstrance petitions, declaring that the ordinances were null and void and prohibiting Sellersburg from initiating annexation proceedings involving Areas I, K and M for two years. Sellersburg now appeals.

### DISCUSSION AND DECISION

Sellersburg challenges the trial court's conclusion that it failed to met the statutory requirements for annexation. In particular, Sellersburg argues that the trial court made the following errors: (1) improperly concluding that Sellersburg was required to make specific comparisons, pursuant to I.C. § 36–4–3–13(d), between the proposed annexation areas and areas within the municipality with similar topography, land use and population density for the purpose of evaluating its ability to provide capital and noncapital services to the annexation areas; (2) erroneously concluding that Sellersburg's fiscal plans did not adequately address the provision of police protection and storm drainage services to the annexation areas; and (3) failing to consider each proposed annexation separately.

### I. Standard of Review

Initially, we note that the Remonstrators in the present case requested the trial court to enter specific findings of fact and conclusions of law. When a party has requested findings and conclusions pursuant to Trial Rule 52(A), the reviewing court cannot affirm the judgment on any legal basis; rather, we determine whether the trial court's findings are sufficient to support the judgment. *Vanderburgh County Bd. of Comm'rs v. Rittenhouse*, 575 N.E.2d 663, 665 (Ind.Ct.App.1991), *trans. denied.* In reviewing the judgment, we first determine whether the evidence supports the findings, and then whether the findings support the judgment. *Id.* We will reverse only if the judgment is clearly erroneous, ie., when the judgment is unsupported by the findings of fact and conclusions entered on the findings. *Matter of Ordinance to Annex Certain Territory to City of Fort Wayne*, 642 N.E.2d 524, 527 (Ind.Ct.App.1994), *trans. denied.* The trial court's findings are clearly erroneous if the record is devoid of any facts or reasonable inferences therefrom to support them. *Id.* We neither reweigh the evidence nor reassess the credibility of witnesses; rather, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing therefrom. *Id.*

1. Oral argument was held in Indianapolis on    February 18, 1997.

■ Furthermore, we note that the power of annexation is fundamentally legislative and, as a result, the judicial role in annexation cases is limited to that prescribed by statute. *Chidester v. City of Hobart,* 631 N.E.2d 908, 910 (Ind.1994). Judicial review of a municipality's exercise of its annexation powers is only triggered if the remonstrators garner support from the majority of landowners in the annexed territory. *Id.* At the remonstrance hearing, the burden is on the municipality to demonstrate its compliance with the statute. *Id.* The court's review is limited to determining whether the municipality has exceeded its authority and whether the statutory requirements for annexation have been satisfied. *Id.*

## II. Specific Comparisons

Sellersburg contends that the trial court erroneously concluded that I.C. § 36–4–3–13(d) required it to make specific comparisons between the proposed annexation areas and areas within its corporate boundaries with similar topography, land use and population density in order to evaluate its ability to provide capital and noncapital services to the annexation areas. According to Sellersburg, its fiscal plan and policy sufficiently complied with the requirements of the annexation statute because it utilized a town-wide standard in determining the proper level of services to provide to the annexed territories and it made "general comparisons" between the services provided to the annexation areas and other areas of the town.

Under I.C. § 36–4–3–13(d), a municipality is required to produce a written fiscal plan and establish a definite policy for providing services to the annexed territory which are equivalent to services provided to the town. *City of Hobart v. Chidester,* 596 N.E.2d 1374, 1378 (Ind.1992). The statute specifically requires the municipality's written plan and policy to show:

(4) that planned services of a noncapital nature, including police protection, fire protection, street and road maintenance, and other noncapital services normally provided within the corporate boundaries, will be provided to the annexed territory within one (1) year after the effective date

of annexation, and that they will be provided in a manner equivalent in standard and scope to those noncapital services provided to areas within the corporate boundaries that have similar topography, patterns of land use, and population density;

(5) that services of a capital improvement nature, including street construction, street lighting, sewer facilities, water facilities and storm water drainage facilities, will be provided to the annexed territory within three (3) years after the effective date of annexation, in the same manner as those services are provided to areas within the corporate boundaries that have similar topography, patterns of land use, and population density and in a manner consistent with federal, state and local laws, procedures, and planning criteria;

I.C. § 36–4–3–13(d)(4) and (5). The qualification in subsections (d)(4) and (5), that services provided to the annexed areas must be equivalent to those provided to areas within the municipality's corporate boundaries with "similar topography, patterns of land use, and population density," serves as a guidepost for municipalities in determining what services should be provided to the annexed territory. *Chidester,* 596 N.E.2d at 1378. As our supreme court noted, the purpose of the requirement is to ensure that municipalities "provide like services to like areas." *Id.*

■ The controversy in the present case centers on whether the statute requires municipalities to make specific comparisons between annexed territories and areas within its corporate boundaries with similar topography, land use and population density to ensure that municipalities "provide like services to like areas." Sellersburg contends that it was not required to make specific comparisons under the statute because the town is relatively homogenous, it does not employ different service standards for different areas of the town, and it made general comparisons between the town and the annexed territories.

This court previously confronted this issue in *Drake v. City of Fort Wayne,* 543 N.E.2d

1145 (Ind.Ct.App.1989), *trans. denied.*[2] In *Drake,* the remonstrators challenged a city annexation ordinance on the grounds that the City improperly utilized a city-wide standard to measure the adequacy of the services to be provided to the newly annexed territory. *Id.* at 1150. In response, the City argued that its annexation plan properly utilized a city-wide standard because the City did not employ different service standards for different areas. *Id.* at 1151. We stated, however, that "in order to employ a city-wide standard for the purpose of determining the adequacy of services offered to [the] annexed territory, the City would have to be of a homogenous nature." *Id.* Therefore, despite evidence that the City enforced uniform standards for police protection, fire protection and other urban services, we held that the City's use of a city-wide standard failed to properly evaluate the services to be provided to the annexation territory under the standards set forth in I.C. § 36–4–3–13(d)(4) and (5) because evidence presented at the remonstrance hearing indicated that the City was not a homogenous community, including the fact that the support structure in several areas of the city had to be varied to enforce uniform police response times and street surfacing and repair techniques varied throughout the city. *Id.*

Based on the reasoning in *Drake,* we later held that when an annexation is challenged by residents of the annexed territory, the trial court must "determine whether each specific comparable area in the proposed annexation territory would receive equal capital services and equivalent non-capital services to its listed comparable area within [the municipality]." *City of Hobart v. Carter,* 644 N.E.2d 898, 901 (Ind.Ct.App.1994). In determining whether equivalent services will be provided, the trial court should rely on both the written plan and the oral testimony regarding the plan's implementation offered at the hearing. *Id.* at 902.

In the present case, the record reveals that John Toombs, Sellersburg's Town Engineer and the author of the fiscal plans, testified at

length about his methodology in preparing each of the fiscal plans and the services to be provided to the annexed territories. Specifically, Toombs testified that he had become intimately familiar with Sellersburg and the annexed territories because of his involvement in numerous water and sewer projects in the area and the development of Sellersburg's comprehensive plan and zoning ordinances. Record at 312–15, 438, 447. Toombs then testified that he made "general comparisons" between the services provided to the annexed areas and areas within Sellersburg by drawing on his personal knowledge of Sellersburg and talking with Town Council members, the Chief of Police and other town officials charged with supervising the provision of municipal services. R. at 320–30, 420, 425, 447. Based on this information and the fact that Sellersburg had already been providing municipal services to the annexed territories, Toombs concluded that services would be provided to the annexed territories in the same manner as those services provided to the existing town. R. at 330, 350–51, 373.

On cross-examination,. however, the Remonstrators questioned Toombs extensively on the type of comparisons and studies he made in reaching this conclusion. At this time, Toombs admitted that he did not make specific comparisons between the services provided to the annexation areas and areas within the existing town boundaries that had similar topography, land use and population density. R. at 422–424. Although Toombs stated that comparable areas existed and that topography, land use and population density varied throughout Sellersburg's corporate boundaries, Toombs stated that he did not have "the mental desire and need" to make specific comparisons because he possessed an intimate knowledge of Sellersburg and the annexed territories. R. at 453.

On the basis of this evidence, we cannot conclude that the trial court erred in determining that Sellersburg's fiscal plan was not specific enough to comply with the statutory requirements. As previously noted, a munic-

---

**2.** We note that our supreme court subsequently disapproved of *Drake* to the extent that it held that all proof of a municipalities' ability to pro-

vide like services must be set out in the written plan, without regard to the evidence presented at the hearing. *Chidester,* 596 N.E.2d at 1378.

ipality may only utilize a city-wide standard to measure the adequacy of services if the community is homogenous in nature. Here, Sellersburg failed to demonstrate that its community was homogenous. In fact, Toombs specifically testified that the town varied in topography, patterns of land use and population density.

Further, Sellersburg's general comparisons were insufficient to meet the statutory requirements. Although Toombs stated that he was intimately familiar with the annexed territories and that he "generally" compared the territories to other areas within the town boundaries, he did not testify about, and Sellersburg did not present any evidence regarding, the nature and type of services presently provided to comparable areas. As a result, the trial court was unable to determine whether like services would be provided to like areas. Additionally, evidence presented at the hearing directly contradicted Toombs' testimony that he had conversed with Sellersburg's department supervisors in assessing the town's ability to provide equivalent services to the annexed territories. In particular, Sellersburg Police Chief David Kinder testified that he had never had any discussions with Toombs about providing police protection to the annexed territories and had not seen Sellersburg's annexation plans prior to the hearing. R. at 532–33. Considering that Sellersburg had the burden of proving its compliance with the statute, we cannot say that the trial court erred in determining that Sellersburg's fiscal plan and annexation policy were not specific enough to comply with I.C. § 36–4–3–13.

Although concluding that Sellersburg's fiscal plan and policy were insufficient, it is not our intention to increase the judicial role in the annexation process. As previously stated, annexation is primarily a legislative decision. Nevertheless, the judiciary is charged with ensuring that the minimum requirements for annexation, as prescribed by the

General Assembly, have been satisfied.[3] Under the circumstances in the present case, we find that the trial court did not err in granting the remonstrance petitions.

Judgment affirmed.

NAJAM and DARDEN, JJ., concur.

---

3. Sellersburg also contends that the trial court erred by concluding that Sellersburg's fiscal plan did not adequately address the provision of police protection and storm drainage services to the annexation areas and failed to consider each annexation separately. Having already determined that the trial court did not err in determining that Sellersburg did not comply with the statutory requirements of annexation by failing to provide sufficient comparisons between any of the proposed annexation territories and existing areas within the corporate boundaries, however, we need not address these arguments.