Ginger E. ABBS, Robert Brewster, Brenda Ann Crim, Thomas C. Knopp, Regina S. Knopp, Harold A. Schrock, Revocable Trust, A. Dial Rogers, Eloise H. Rogers, Kevin K. Kirkpatrick, Mark J. Kirkpatrick, Kristina Kirkpatrick, John A. Turco, Michele R. Turco, John Lockwitz and Vivian Rarick, Appellants–Plaintiffs,

v.

The TOWN OF SYRACUSE, an Indiana municipal corporation, Lorenzo Bucher, Greg Bucher, Tom Lees, Roger Karns, Paul Stoelting, L. Firestone, Mrs. George Warner, John Connolly, Jack Conley, Charles Causey, Jeff Nicodemus, M.L. Groove, Mrs. Ryland Mock and Any Other Persons Claiming an Interest in the Real Estate Described Herein, Appellees–Defendants.

No. 43A03–9612–CV–447.

Court of Appeals of Indiana.

Nov. 10, 1997.

Stephen R. Snyder, Randall L. Morgan, Beckman, Lawson, Sandler, Snyder & Federoff, L.L.P., Syracuse, for Appellants–Plaintiffs.

Jodie L. Miner, Ice Miller Donadio & Ryan, Indianapolis, for Appellees–Defendants.

## OPINION

GARRARD, Judge.

### STATEMENT OF THE CASE

Ginger E. Abbs, et al. (the "Landowners") appeal the trial court's declaratory judgment entered in favor of the Town of Syracuse (the "Town").[1] We affirm.

### FACTS AND PROCEDURAL HISTORY

The Landowners are fee simple owners of shoreline property along Syracuse Lake (the "Lake") located in Kosciusko County. On April 8, 1994, the Landowners filed a complaint for declaratory judgment against the Town and various residents who had erected piers and routinely docked boats at the ends of certain public streets and alleys which lead to the water's edge of the Lake. The Landowners' property is bordered on one side by the Lake and on the other side by these public streets and alleys. In their complaint, the Landowners sought a declaration of their right to regulate the riparian rights to the Lake exercised from the public rights-of-way adjoining their property.

All parties filed motions for summary judgment. The trial court granted summary judgment in favor of the Town and, in doing so, deemed the summary judgment motions of the individual defendants moot. Specifically, the trial court concluded that the Town has riparian rights with respect to the public streets and alleys that terminate at the water's edge and that the Landowners may not claim exclusive riparian rights, thereby excluding members of the public or the Town, by virtue of their ownership of the underlying fee to the public ways.

On appeal, this court reversed the trial court's entry of summary judgment by published opinion in *Abbs v. Town of Syracuse*, 655 N.E.2d 114 (Ind.Ct.App.1995), *trans. denied* ("*Abbs I*"). From our review of the record in *Abbs I*, it appeared that the trial court granted summary judgment in favor of the Town based upon the conclusion that the Town possessed riparian rights attached to the street property. However, in that appeal, the Landowners correctly argued that as the owners of the fee title to the land underneath the streets built on the public rights-of-way, they are the title holders to the riparian rights for that property. *Id.* at 115–16. Nevertheless, we concluded that the issue remained as to what extent, if any, the Town's public rights-of-way include with them the right to enjoy the riparian rights. *Id.* at 116. Because we concluded that the rights-of-way are ambiguous, we remanded to the trial court to hear extrinsic evidence to determine the intent of the grantors in creating the easements. *Id.*

On remand, the trial court entered its findings of fact, conclusions of law and declaratory judgment in favor of the Town. In essence, the trial court concluded that in creating the public rights-of-way, the grantors intended to grant to the public riparian rights of access to the Lake, including the right to establish and use piers, subject only to regulation by the proper municipal or governmental authority. Thus, the court concluded, the Landowners are without right to regulate such usage. Again, in concluding that the Landowners are without regulatory power, the trial court found that the claims for and against the individual defendants were rendered moot. The Landowners appeal the trial court's declaratory judgment.

### ISSUE

The Landowners present two issues for our review which we consolidate and restate as one dispositive issue: Whether the trial court clearly erred when it concluded that the grantors of the public rights-of-way lead-

---

1. Although there were several other defendants below, those defendants are not parties to this appeal. Indeed, the trial court determined that its declaratory judgment in favor of the Town rendered moot the Landowners' claims against those defendants and the Landowners do not challenge that conclusion.

ing to the water's edge of the Lake intended to include in their grant the use and enjoyment of all riparian rights attached thereto.

## DISCUSSION AND DECISION
### Standard of Review

▪ Upon the Landowners' request, the trial court entered special findings of fact and conclusions of law. When reviewing requested findings and conclusions under Indiana Trial Rule 52(A), we apply a two-tiered standard of review. We first determine whether the evidence supports the findings, and then whether the findings support the judgment. *Gunderson v. Rondinelli,* 677 N.E.2d 601, 603 (Ind.Ct.App.1997). Special findings and the judgment rendered thereupon will be set aside only if they are clearly erroneous. *Id.* The trial court's findings are clearly erroneous if the record is devoid of any facts or reasonable inferences therefrom to support them. *Town of Sellersburg v. Proposed Annexation of Certain Property Located in Clark County,* 677 N.E.2d 608, 609 (Ind.Ct.App.1997). The trial court's judgment is clearly erroneous if unsupported by the findings of fact and conclusions entered on those findings. *Id.* This court neither reweighs the evidence nor judges the credibility of witnesses; rather we consider only the evidence most favorable to the judgment and the reasonable inferences flowing therefrom. *Id.*

### Intent of the Grantors

The 1837 Original Plat of the Town evidences the existence of several streets and alleys clearly dedicated as public rights-of-way which lead to the water's edge of the Lake. The Original Plat contains no language explaining the purpose of those rights-of-way. The later 1875 Strombeck and Weaver's Second Addition Plat evidences those same public rights-of-way adding only an explanatory phrase that the grantors were "reserving the right to open streets and alleys as lots are sold." Due to the above-noted general dedication of the public rights-of-way, we concluded that the grant is ambiguous as to what rights are being conveyed, and remanded to the trial court to consider the surrounding facts and circumstances to

determine the intent of the easements' creators. *Abbs,* 655 N.E.2d at 116–17.

▪ Our decision to remand to the trial court on the issue of the intent of the grantors in *Abbs I* was based upon our review of cases which hold that when the grant of an easement is ambiguous as to what rights are being conveyed to the easement holder, extrinsic evidence is admissible to ascertain the intent of the parties who created the easement. *See Klotz v. Horn,* 558 N.E.2d 1096, 1098 (Ind.1990); *Metcalf v. Houk,* 644 N.E.2d 597, 600 (Ind.Ct.App.1994); *Brown v. Heidersbach,* 172 Ind.App. 434, 441, 360 N.E.2d 614, 621 (1977). As this court explained in *Brown,* "[a]n instrument creating an easement must be construed according to the intention of the parties as ascertained from all facts and circumstances, and from examination of all its material parts." *Brown,* 172 Ind.App. at 441, 360 N.E.2d at 621. Indeed, when faced with an ambiguity, the focal point of inquiry is the intent of the parties who created the easement. *Gunderson,* 677 N.E.2d at 604.

In the present case, after what appears to be an exhaustive search by both the trial court and the parties, the trial court determined that aside from the plats creating the public rights-of-way, virtually no evidence exists regarding the intent of the grantors in creating the public rights-of-way. Specifically, the trial court found that "[t]he original plat contains no description as to the purpose of the [rights-of-way] other than the plain meaning of the words. The Strombeck and Weaver Addition contains a phrase of limited value in explaining its purpose. . . ." Record at 606. Moreover, as noted by the trial court, because this case involves rights-of-way dedicated long ago for public purposes, rather than for limited private purposes, no clear statement of the grantors' intent is available like that which can be gleaned from cases involving more recent conveyances of private easement rights. *See Brown,* 172 Ind.App. at 441, 360 N.E.2d at 619–20 (express terms of the grants creating lake access easement indicated that no riparian rights were intended to be conveyed); *Gunderson,* 677 N.E.2d at 603 (two of the parties involved in original creation of 30–foot lake

access easement testified that easement was intended for walking purposes only); *Metcalf*, 644 N.E.2d at 600 (one of the original developers of subdivision testified that grantors' intent in creating ingress and egress easement to water's edge of lake was so easement holders could enjoy their land in same manner as homeowners with lakefront property).

The Landowners contend that, due to this admitted lack of a clear statement of intent, any finding by the trial court regarding the original grantors' intent is unsupported by the evidence. Thus, they argue, the trial court clearly erred when it concluded that the grantors of the public rights-of-way leading to the water's edge of the Lake intended to convey with it the right to enjoy the riparian rights attached thereto. We disagree with the Landowners.

Due to the silence of the plats themselves, the trial court considered the fact that the public rights-of-way were platted to the water's edge of the Lake and the reasonable inferences to be drawn therefrom, as well as the historical circumstances surrounding the dedication of the rights-of-way. Specifically, the trial court found in relevant part as follows:

> Using historical perspective, the grantors lived in a time when the area was undeveloped. A right-of-way is unlike the probable perception then. Certainly automobiles didn't exist and we know that waterways were a far more important means of transportation than they are now; electrical, telephone, cable TV and other wires weren't around and underground use of rights-of-way for water and sewage wouldn't have been a consideration. To them the essence of the right-of-way dedicated to public purpose would have been transportation across land to water. Access to the water would imply the right to use the water—the classic riparian right. These observations conform with the evidence of custom and usage of these locations.

Record at 607–08 (citation omitted). The trial court's reasonable inference that the platting of the rights-of-way to the water's edge indicates the grant of riparian rights to the public, is supported by case law. As we noted in *Abbs I*, a street which terminates at the edge of a lake contemplates that the public will use the street to gain access to the lake. *Abbs*, 655 N.E.2d at 116–17 n. 3. Moreover, access to water is generally sought for particular purposes beyond merely reaching the water. *Id.* at 116 (citing *Metcalf*, 644 N.E.2d at 600). Based upon the way the public streets and alleys were platted and the above-noted observation of the historical facts and circumstances surrounding the dedication of those public rights-of-way, the trial court concluded that the grantors intended to include riparian rights in their dedication to the public, including the right to access the water from the rights-of-way, to establish and use piers, and to reasonably divert or use water.

The trial court's finding that the grantors intended to include in their grant of the public rights-of-way the use and enjoyment of the riparian rights attached thereto is supported by the evidence before the trial court and reasonable inferences to be drawn therefrom. Further, that finding supports the court's declaratory judgment in favor of the Town that the Landowners are without right to regulate the riparian usage of those public rights-of-way. Having found that the evidence supports the trial court's findings and that the findings support the judgment, we must affirm.

We find unpersuasive the Landowners' argument that the language providing that the grantors were "[r]eserving the right to open streets and alleys as lots are sold" contained in Strombeck and Weaver's Second Addition Plat is evidence that the grantors' purpose in platting the public rights-of-way to the water's edge was to provide access to the front of the lots which they were attempting to sell and not to provide the public access to the Lake. Instead, we agree with the trial court that such reservation language lends nothing to show the intent of the easements, but was more likely to "give the grantor[s] leeway as to when [they] must undertake the effort and expense of making the right-of-way passable." Record at 606. This court has long recognized that when a new town or addition is laid out, it is not expected that all the

streets will be needed by the public at once and, thus, the use and improvement of the streets need not occur until growth of the town or addition demands it. *See Walmer v. Town of Bremen*, 99 Ind.App. 186, 190, 191 N.E. 175, 177 (1934).

The Landowners merely invite this court to reweigh the evidence and reasonable inferences flowing therefrom in their favor, a task not within our prerogative on appeal. The judgment is supported by the findings and the evidence.

Affirmed.

STATON and RUCKER, JJ., concur.