In the Matter of ORDINANCE NO. X–03–96, An Ordinance to Annex Certain Territory to the City of Fort Wayne (Southwest Extended Annexation).

**City of Fort Wayne, Appellant–Respondent,**

v.

**Certain Southwest Annexation Area Landowners, Appellees–Petitioners.**

No. 02A05–0002–CV–77.

Court of Appeals of Indiana.

March 9, 2001.

☞223.2(.5)

Mark E. Giaquinta, Robert W. Eherenman, Haller & Colvin, P.C., J. Timothy McCaulay, Helmke, Beams, Boyer & Wagner, Fort Wayne, IN, Attorneys for Appellant.

Edward L. Murphy, Jr., Larry L. Barnard, Miller Carson Boxberger & Murphy

LLP, Fort Wayne, IN, Attorneys for Appellees.

## OPINION

ROBB, Judge

The City of Fort Wayne, Indiana (the "City") appeals the trial court's judgment in favor of the remonstrators prohibiting the City from annexing portions of Aboite and Wayne Townships (the "annexation territory"). We affirm.

### Issue[1]

The City several issues for our review, only one of which we find dispositive: Whether there was sufficient evidence to support the trial court's conclusion that the City's fiscal plan was deficient in calculating the cost estimates for the planned services to be furnished in the annexation territory.

### Facts and Procedural History

The facts most favorable to the trial court's judgment reveal that on December 3, 1996, the Common Council of the City passed and adopted Annexation Ordinance X–03–96 which was signed and approved by the mayor on December 5, 1996. The annexation territory encompasses more than 8,000 acres, is 12.5% contiguous to the existing boundaries of the City, and has a population of 22,587 persons. The effective date of the annexation ordinance is January 1, 2006.

On February 4, 1997, property owners in the annexation territory filed a remonstrance against the annexation ordinance in the Allen County Superior Court. After conducting a hearing on the remonstrance, the trial court entered judgment in favor of the remonstrators. This appeal ensued.

### Discussion and Decision

The City contends that there was insufficient evidence to support the trial court's conclusion that the cost estimates contained in the written fiscal plan for the planned services to be furnished to the annexation territory were deficient. We disagree.

### I. Standard of Review

Pursuant the City's request under Indiana Trial Rule 52(A), the trial court entered Findings of Fact and Conclusions of Law. We apply a two-tiered standard to review the court's entry. "We determine whether the evidence supports the findings and the findings support the judgment." *Chidester v. City of Hobart*, 631 N.E.2d 908, 910 (Ind.1994) ("*Chidester II*"). In deference to the trial court's proximity to the issues, "we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment." *Id.* (citing *Indianapolis Convention & Visitors Ass'n v. Indianapolis Newspapers, Inc.*, 577 N.E.2d 208 (Ind.1991)). We do not reweigh the evidence, but consider only evidence favorable to the trial court's judgment. *Id.* Challengers thus labor under a heavy burden, but one which may be overcome by showing that the trial court's findings are clearly erroneous. T.R. 52(A); *Chidester II*, 631 N.E.2d at 909–10.

Furthermore, we note that the power of annexation is fundamentally legislative, and, as a result, the judicial role in annexation cases is limited to that prescribed by statute. *Town of Sellersburg v. Proposed Annexation of Certain Property Located in Clark County*, 677 N.E.2d 608, 610 (Ind.Ct.App.1997). Judicial review of

---

1. We note that the City also raises the following issues: (1) whether there was insufficient evidence to support the trial court's conclusion that the City failed to provide in its fiscal plan that it would deliver noncapital and capital improvement services to the annexation territory within the statutorily fixed periods of time; and (2) whether there was insufficient evidence to support the trial court's finding of fact that the City's proposed annexation failed because the City did not plan a neighborhood park for the annexation territory similar to a neighborhood park located in the comparable area. Because we have determined that the City's fiscal plan was deficient in calculating the cost estimates of planned services to be furnished in the annexation area, and this is sufficient to affirm the trial court's judgment, we need not address these issues.

a municipality's exercise of its annexation powers is only triggered if the remonstrators garner support from the majority of the landowners in the annexed territory. *Id.* At the remonstrance hearing, the burden is on the municipality to demonstrate its compliance with the statute. *Id.* The court's review is limited to determining whether the municipality has exceeded its authority and whether the statutory requirements for annexation have been satisfied. *Id.*

## II. Annexation of Property

■■■■■■ "Annexation" is a special statutory proceeding for the detachment of annexed property from a county in which it lies, and, if lawfully annexed, such property becomes part of the annexing municipality. 56 Am.Jur.2d *Municipal Corporations* § 39 (2000). When a municipality annexes property into its corporate boundaries, the annexed property becomes subject to the zoning jurisdiction of the annexing municipality. *Id.* at § 40. Property may be annexed to manage urban growth. *Matter of Annexation Ordinance No. X–07–91 (Blackhawk Annexation)*, 645 N.E.2d 650, 656 (Ind.Ct.App. 1995), *trans. denied.* In addition, a City may validly annex property where nearby nonresidents of the municipal corporation are utilizing City streets, police force, and fire protection without paying for these services and the accompanying infrastructure. *See Rogers v. Municipal City of Elkhart*, 655 N.E.2d 593, 596 (Ind.Ct.App. 1995), *overruled on other grounds*, 688 N.E.2d 1238 (Ind.1997). However, a City may not annex property solely for the tax revenues to be obtained. *Matter of Ordinance to Annex Certain Territory to City of Fort Wayne*, 642 N.E.2d 524, 530 (Ind. Ct.App.1994), *trans. denied.*

■■■■■■ The annexation of property in Indiana encompasses three stages: (1) legislative adoption of an ordinance annexing certain territory and pledging to deliver certain services within a fixed period; (2) an opportunity for remonstrance by affected landowners; and (3) judicial review. *City of Hobart v. Chidester*, 596 N.E.2d

1374, 1375 (Ind.1992) (*"Chidester I"*). Municipal annexation is governed by Indiana Code sections 36–4–3–1 to –22. It is well established that a municipality may annex territory without the consent of the inhabitants of that territory. *Chidester II*, 631 N.E.2d at 912. However, owners of property within annexed territory are allowed to appeal or remonstrate against annexation. *Matter of Annexation Proposed by Ordinance No. X–02–93*, 652 N.E.2d 878, 879 (Ind.Ct.App.1995), *trans. denied.* We have previously stated that remonstrance is the exclusive manner for landowners of annexed property to obtain relief from annexation proceedings. *Deaton v. City of Greenwood*, 582 N.E.2d 882, 885 (Ind.Ct. App.1991). The effect of filing a remonstrance is to abate the culmination of the annexation pending review in the courts, where the burden is on the municipality to sustain the annexation by showing that it has complied with the requirements of the statute. *City of Indianapolis v. Wynn*, 239 Ind. 567, 157 N.E.2d 828, 833 (1959). Accordingly, a trial court is not authorized to act unless a remonstrance is filed; if a remonstrance is not filed, the annexation becomes effective. *Id.*

In the present case, the property owners of the annexation territory filed a remonstrance with the trial court on February 4, 1997. R. 11. On January 11, 2000, the trial court entered an order which contained findings of fact and conclusions of law. The trial court's order concluded in part that:

> M) .... Every department head acknowledged in their testimony that the costs they used in preparing the Fiscal Plan were based on 1996 costs for the services described. The Chief of Police acknowledged that his figures contained no inflation. [The City] used a three percent (3%) inflation factor in calculations she made in preparing the totals set forth in the Fiscal Plan. Mr. Staley, one of the Remonstrators' experts, testified that the totals in the Fiscal Plan did not add up at three percent (3%) infla-

tion. [The City] acknowledged the planning of the services for the Annexation Territory would not start until 2001. The Solid Waste Manager testified that she was not aware of any city that projected nine (9) years into the future. She said five (5) years is the standard projection period. The Director of Animal Control acknowledged the need for population projections for 2006 in order to give an estimate of the staff needed in 2006. The Transportation Director acknowledged that the figures he set forth in the Fiscal Plan were probably inadequate for 2006. He actually used 1994 personnel costs and equipment costs for the entire city in preparing his portion of the Fiscal Plan. He acknowledged making no predication for the costs of or types of roads needed in the Annexation Territory in 2006.

\* \* \*

O) ... The City has not set out in the Fiscal Plan or in its evidence at the hearing all of the planned services of a noncapital nature it will provide within one (1) year of 2006, and it has not set out the cost estimates of those planned services. The City has not set out in the Fiscal Plan or in its evidence at the hearing all of the services of a capital improvement nature it will provide within three (3) years of 2006, and it has not set out the cost estimates of those planned services. The City officials not only acknowledged that this had not been done, but they further acknowledged that they could not predict or project such cost estimates and some of the services nine (9) or ten (10) years into the future. The City officials acknowledged they had no experience in projecting that far out. The evidence has established that the City will not even start to plan for services or determine the cost estimates for those services until five (5) years before 2006.

\* \* \*

R) ... the City has failed to meet its burden of proof that the proposed annexation complies with the requirements of Indiana Code Section 36–4–3–13(d)(1) ..., and, therefore, the Court must order that the proposed annexation not take place.

R. 532–35. The City argues on appeal that its written fiscal plan contained sufficient cost estimates for planned services to be furnished in the annexation territory and thus, the trial court erred in entering judgment in favor of the remonstrators. Therefore, we must determine whether the trial court's findings of fact are supported by the evidence and whether the findings support its conclusions of law that the City's written fiscal plan with regards to cost estimates was deficient.

### III. Cost Estimates

 In defending a proposed annexation, a municipality is required to prove that it has met the requirements set forth in Indiana Code section 36–4–3–13.[2] *Bradley v. City of New Castle*, 730 N.E.2d 771, 784 (Ind.Ct.App.2000). In addition to other requirements, a municipality must prove that it has established a written fiscal plan for providing services to land it plans to annex. *Matter of Ordinance to Annex Certain Territory to City of Fort Wayne*, 642 N.E.2d at 529. The legislature's requirement of a written fiscal plan has three purposes. First, the publication of a written plan permits landowners to make an intelligent decision about whether to accept annexation or remonstrate. *Sedlak v. Town of St. John Lake County*, 403 N.E.2d 1126, 1127 (Ind.Ct.App.1980). Second, the requirement of a written plan makes the opportunity for remonstrance and judicial review more realistic. *Id.* Third, a fiscal plan needs to be in writing to protect the right of landowners to institute proceedings to force an annexing city to provide the services promised under the plan. *Id.* If a written plan were not re-

---

**2.** We note that Indiana Code section 36–4–3–13 has been amended since 1996, but we have utilized the statute as it was written in 1996,

the year the annexation ordinance was issue was passed.

quired, a landowner could · be faced with attempting to establish the failure of a plan whose existence he might be incapable of proving in the first place. *Id.* Therefore, the plan must be sufficiently specific to enable the landowners to determine whether the services promised have been provided. *Chidester I,* 596 N.E.2d at 1378.

We have previously stated that the mere recital of the statutory language of Indiana Code section 36–4–3–13(d) in a written fiscal plan is insufficient for purposes of annexation. *Id.* However, it is not required that all proof of a city's ability to provide like services be set out in the written plan. *City of Hobart v. Carter,* 644 N.E.2d 898, 901 (Ind.Ct.App.1994). A trial court must rely on both the written fiscal plan and evidence adduced at the remonstrance hearing when examining a municipality's annexation of land. *Id.*

Indiana Code section 36–4–3–13(d)(1) provides that a fiscal plan must contain "[t]he cost estimates of planned services to be furnished to the territory to be annexed." With regard to planned services, Indiana Code section 36–4–3–13 provides that a City's fiscal plan must contain:

(4) The planned services of a noncapital nature, including police protection, fire protection, street and road maintenance, and other noncapital services normally provided within the corporate boundaries, will be provided to the annexed territory within one (1) year after the effective date of annexation, and that they will be provided in a manner equivalent in standard and scope to those noncapital services provided to areas within the corporate boundaries that have · similar topography, patterns of land use, and population density.

(5) That services of a capital improvement nature, including street construction, street lighting, sewer facilities, water facilities, and stormwater drainage facilities, will be provided to the annexed territory within three (3) years after the effective date of the annexation, in the same manner as those services provided to areas within the corporate boundaries that have similar topography, patterns of land use, and population density, and in a manner consistent with federal, state, and local laws, procedures, and planning criteria.

Ind.Code § 36–4–3–13(d)(4), (5). Thus, a City's fiscal plan must contain cost estimates for both noncapital and capital improvement services to be furnished in the annexed area.

However, there has been discussion by both parties regarding the date to utilize for purposes of estimating the cost of noncapital and capital improvement services to be furnished in the annexation territory. The interpretation of a statute is a question of law which is reserved for the courts. *Chavis v. Patton,* 683 N.E.2d 253, 257 (Ind.Ct.App.1997). In addition, statutes relating to the same subject matter should be construed together in order to produce a harmonious statutory scheme. *State v. Eilers,* 697 N.E.2d 969, 970 (Ind. Ct.App.1998). "A statute should not be viewed as if the reader is peering at it through a keyhole. It must be read with its companions." *Jones v. State,* 569 N.E.2d 975, 978 (Ind.Ct.App.1991).

Construing Indiana Code section 36–4–3–13(d)(1) with the provisions of Indiana Code sections 36–4–3–13(d)(4) and (5), we believe that cost estimates for noncapital services must be figured from one year after the effective date of annexation and for capital improvement services, three years after the effective date of annexation. To do otherwise would render a property owner unable to make an intelligent decision regarding whether to accept the proposed annexation or remonstrance. For example, in proposing annexation a City must be financially able, to command the necessary funds to accomplish the task of providing the planned services. *LeMaster v. City of Fort Wayne,* 156 Ind.App. 564, 297 N.E.2d 887, 889 (1973). When a City figures cost estimates on the date the services are to be provided to the annexed area, a property owner is able to deter-

mine whether the City can muster enough revenue to cover the cost of the new expenditures, the noncapital and capital improvement services. In addition, by figuring the cost estimates on such a date the property owner is provided a means of examining whether the City has complied with the fiscal plan and provided the needed services.

■ However, a City is not required to ascertain with mathematical certainty the cost of planned services to be provided to the territory to be annexed. Indiana Code section 36–4–3–13 provides no guidelines for determining the minimum accuracy required for the cost estimates. We can assume that the cost estimates for planned services must be reasonably accurate and grounded in information pertaining to the effective date planned services are to be furnished so that a property owner and a trial court can make an informed decision regarding the soundness and viability of the proposed annexation. Otherwise, we see no reason why the legislature would require a fiscal plan to contain such computed figures. Therefore, we believe that the use of any other date besides the date the City must provide the noncapital and capital improvement services to be furnished in the annex area would result in cost estimates becoming an irrelevant and arbitrary figure.

■ In the present case, the effective date of the annexation is January 1, 2006. Therefore, the City's fiscal plan must contain cost estimates for noncapital services figured as of January 1, 2007. With regard to capital improvement services, the valuation date should be January 1, 2009. Our review of the record reveals that the majority of the department heads of City agencies utilized 1996 figures in estimating the cost of planned services to be furnished to the annexation territory. The City's fiscal plan reveals as much where it provides that:

It should be noted that the costs of providing municipal services have been rounded off to the nearest dollar and are calculated at today's dollar value. However, costs to provide municipal services to the [annexation territory] will be inflated in the Financial Summary Section, which follows this section.

R. 578. It is apparent that the City inflated the cost estimates by three percent.[3] However, the record reveals no basis for this rate of inflation and we believe that the City arbitrarily chose this figure. Therefore, we hold that the City's fiscal plan failed to comply with the statutory requirements of Indiana Code section 36–4–3–13(d)(1), and thus, the trial court properly entered judgment in favor of the remonstrators.

### Conclusion

Based on the foregoing, we hold that the trial court properly entered judgment in favor of the remonstrators because there was sufficient evidence to support the trial court's conclusion that the City's fiscal plan was deficient in calculating the cost estimates of planned services to be provided in the annexation territory.

Affirmed.

RILEY, J., and DARDEN, J., concur.

---

**3.** We note the record is incomplete in that the City's written fiscal plan is missing pages 26–29. However, we have gleaned from the briefs of both parties that the City inflated its cost estimates for planned services to be furnished in the annexed area by three percent. *See* Brief of Appellant at 20; Brief of Appellees at 33.